## MILLER *v.* TOBIN.

*(Circuit Court, D. Oregon.* December 10, 1883.)

1. RECORD—WHAT CONSTITUTES, UNDER THE ACT OF 1875.
   The term "record," as used in sections 3 and 7 of the act of 1875, (18 St. 470,) *held* to include the testimony taken and on file in a cause at the time of filing a petition and bond for its removal from a state court.

2. JURISDICTION OF STATE COURT—WHEN IT CEASES.
   Upon the filing of a petition and bond in due form and effect for the removal of a cause from a state court, whether in vacation or term-time, in a case removable under the act of 1875, the jurisdiction of the state court ceases at once, and depositions taken thereafter before a referee theretofore appointed to take the testimony in the case are no part of the record or proceedings therein.

3. RIGHT OF REMOVAL BY DEFENDANT—NOT LOST BY INSUFFICIENT DENIALS IN ANSWER.
   When it appears from the case made by the complaint that it arises under an act of congress, the right of removal by the defendant is not lost by reason of insufficient denials in the answer.

4. TIME FOR FILING PETITION FOR REMOVAL.
   A hearing on a demurrer to a complaint, and an order overruling the same and allowing the defendant to answer to the merits of the case, is not a "trial" within the meaning of that term as used in section 3 of the act of 1875, *supra;* but such "trial," whether it be an issue of fact or law, is one upon which a final disposition of the case is made.

5. "TRIAL" AND "HEARING."
   "Trial" is a common-law term, to denote that step in the case by which the facts are ascertained, and is always final unless the matter is set aside for cause. "Hearing" is an equity term, and may denote the argument and consideration of a case at more than one stage of its progress, but when it results in an absolute disposition of the case it is called "final;" but the term "trial," as used in the act of 1875, *supra*, comprehends that step or proceeding in a cause at law or in equity which results in a final judgment or decree, whether the "trial" be of an issue or question of law or fact.

Suit to Compel a Patentee of Land to Convey the Same.

*N. B. Knight,* for plaintiff.

*James F. Watson,* for defendant.

DEADY, J. This is a motion to remand this cause to the state court. A brief statement of the pleadings and proceedings therein is necessary to a correct understanding of the points made by and on the argument of it.

On April 6, 1883, the plaintiff commenced suit in equity in the circuit court of the state for the county of Klamath, to compel the defendant to convey the legal title and deliver the possession to him of a certain tract of land containing 160.66 acres, and situate in said county,—the same being parts of sections 17, 18, and 19 of township 39 S., and of range 9 E. of the Wallamet meridian,—upon substantially the following allegations of fact: That said land is swamp and overflowed, and on January 15, 1872, the agents of the state, in pursuance of the act of October 26, 1870, to provide for the selection

and sale of the swamp and overflowed lands granted to the state by the act of March 12, 1860, selected it as such, and gave notice thereof to the United States surveyor general and local land-office, and in September of the same year sold the premises to the plaintiff, who then paid them 20 per centum of the purchase price thereof, and on July 5th said agents, upon proof that the plaintiff had reclaimed said land, and the payment of the balance of the purchase money, made a conveyance of the same to him; that by the last survey of said township, made in 1872 and approved in April, 1873, said land was returned as "public land," and on May 3, 1873, the defendant duly claimed the same, in the proper land-office, as a pre-emption, and on April 24, 1875, made proof in said office of his compliance with the laws of the United States as a settler thereon under the pre-emption act, and on October 6, 1875, a patent was issued to him therefor; and that the defendant well knew the land in question was swamp and overflowed, and that his proof of compliance with the pre-emption act was false and fraudulent.

On April 24, 1883, the defendant demurred to the complaint because it did not state facts sufficient to constitute a cause of action, with three special assignments to the effect that the suit was barred by the lapse of time, and a fourth to the effect that the sale to the plaintiff was valid, under the proviso to section 1 of the act of March 12, 1860, by which the United States reserved the right to dispose of any land within the purview of said act, to a settler under the pre-emption act, at any time before the title thereto is confirmed to the state; and on May 22d the same was overruled, with leave to the defendant to answer to the merits.

On May 23d the defendant answered the complaint, denying the material allegations therein, except that of the sale by the plaintiff, and alleging that the plaintiff's proof of reclamation was false and fraudulent, and that he never did anything to drain the land or make it any more fit for cultivation than it was on March 10, 1860, and that the land is "wetter" now than it was then; that the defendant has had 10 acres of land under the plow, on which he raised "wheat, rye, barley, oats, potatoes, and cabbage," besides five acres in timothy, and that none of the remainder of said land has ever been cultivated, either in "grass, cereals, or vegetables;" and that he has put improvements thereon of the value of $1,070, consisting of one mile of fence, a cabin, corral, barn, and bridge.

On May 23d so much of the defendant's answer as alleged the failure of the plaintiff to reclaim this land, and the false and fraudulent character of his proof thereabout, was stricken out on motion of the plaintiff. On the same day a replication was filed in the case, in which the defendant is styled "Collahan," commencing: "The *defendant,* for replication to the defendant's answer," etc. Opposite, in the margin, the clerk or copyist has volunteered this statement: "Error in the name of the defendant." However, the matter is not material now,

as the replication only denies that the defendant acted in good faith, and that his improvements were worth more than $420.

On May 24th the state court made an order, "by consent of all parties," referring the case to its clerk, as a referee, to take the testimony therein.

On July 31st, and in vacation, the defendant filed a petition and bond in due form and effect for the removal of the cause to this court, upon the ground that it arose under a law of the United States, namely, the act of March 12, 1860, aforesaid. On August 3d the referee caused notice to be served on the parties that he would proceed to take the testimony in the case on the 8th inst.

On August 23d the defendant filed a motion to remove the cause to this court, based upon the petition and bond aforesaid, and on August 27th, the first day of that term, the plaintiff filed a motion for judgment on the pleadings, which the court took no action upon, but made an order removing the cause, and directed the clerk to "make out a transcript of all the pleadings, motions, and orders" of the court and deliver the same to the defendant. On the same day the referee reported that he had taken the testimony in the case on the eighth and twenty-third of August, "both parties having rested" on the latter day, and submitted the same to the court.

In his certificate to the transcript, dated September 12th, the clerk states that it is a copy of all "the original pleadings, motions, and orders" in said cause, together with the original petition and bond for removal, "excepting the testimony in said cause, which now remains full and complete in my office, for the reason that the defendant refuses to pay for a transcript of said testimony."

The motion to remand was filed on October 25th, and is based on the following grounds: (1) The defendant has not filed in this court a copy of the record as required by law; (2) that this court has no jurisdiction of the parties or subject-matter, because all the material allegations of the complaint are admitted by the answer, and therefore there is no issue in the case involving the construction of an act of congress, as alleged in the petition for removal.

On November 1st the defendant filed a motion for leave to file a transcript of said testimony. This motion was argued and submitted with the motion to remand on November 10th.

The first ground of the motion to remand involves the interpretation of the word "record" as used in the judiciary act of 1875. By section 3 (18 St. 471) of this act, the party applying for the removal of a cause must give a bond conditioned that he will enter in the circuit court, on the first day of its next session, "a copy of the *record* in such suit;" and in section 7 further time is given in a certain contingency for filing "said copy of *record* in said circuit court." At common law the term does not include depositions or other evidence used in the trial of a case, unless they are made a part of the record by a bill of exceptions. At one time the memorial of the pleadings

and proceedings of the court of chancery, when exercising equity jurisdiction, was not thought to have the dignity and effect of a record, nor was the court considered a court of record, as its power to fine and imprison was denied. 2 Bac. Abr. 392, note; 4 Inst. 84. But in the progress of time, and the growth of the equity jurisdiction of the court, the equality of the same in this particular with the common-law courts has been tacitly conceded or declared by statute. Story, Eq. Jur. § 547.

The statutes concerning writs of error and appeals use the term in apparently the same sense, and so as not to include the testimony merely on file in the case. By section 997 of the Revised Statutes it is simply provided that there shall be returned with a writ of error an "authenticated transcript of the record," while by section 698 it is provided, in appeals in cases in equity, that there shall be transmitted to the appellate court a "transcript of the record," and also "copies of the proofs."

In the case of a removal under section 12 of the act of 1789, (1 St. 79,) the application had to be made at the time of the defendant's appearance, and copies of the "process" against him were required to be filed in the circuit court, which included the declaration or other paper by which the suit was commenced in the state court. *Martin* v. *Kanouse*, 1 Blatchf. 149. But in a removal under the act of 1865, and the amendment thereto of 1867, (14 St. 306, 558; section 639, Rev. St.,) the application may be made at any time before the trial or final hearing of the cause, and the party causing the removal is required to file in the circuit court "copies of the process against him, and of all pleadings, depositions, testimony, and other proceedings in the cause concerning or affecting the petitioner."

Considering the nature of the provisions on this subject in the acts prior to that of 1875, and the apparent purpose and intent of all of them to provide for the removal of a cause as it may stand in the state court when the petition for such removal is filed, my opinion is that the term "record," as here used, ought to be held to include the process, pleadings, depositions, etc., as set forth in detail in the act of 1866, on file in the cause at the time of removal. What has been duly or regularly done in the cause up to that time is a part of it, and ought not to be separated from it on a removal for trial in the circuit court. Technically speaking, a deposition may not be a part of the "record," even in a suit in equity; but it is a part of the cause upon which its correct determination may depend, and for this purpose ought to be considered a part of the "record." But it is contended by the counsel for the defendant that, even upon this construction of the statute, the depositions in question are no part of this record; because (1) the jurisdiction of the state court ceased upon the filing of the petition for removal on July 31st, while the depositions were not taken until between the eighth and twenty-third of August; and (2) that even if its jurisdiction did not cease until Au-

gust 27th, the first day of the term next following the filing of the petition, when it made the order for removal, still, although it appears from the file-marks of the clerk that the report of the referee was filed on that day, it does not appear that it was filed before the order of removal was made.

It is suggested by counsel for the defendant that the clerk of the state court, who was also the referee in the case, is desirous of having it appear that these depositions are a part of this record, so that he may receive the fees for taking and copying them. In the order of removal the court directs the clerk to make a transcript or copy of the record, containing "all the pleadings, motions, and orders," but is silent as to testimony. In the certificate of the clerk to the transcript, some pains are taken to show that it does not contain the testimony in the case, which it is therein stated "now [September 12th] *remains*" in the clerk's office; but when it was *filed* therein, if ever, is not stated. But it is not material what the fact is in this particular. The jurisdiction of the state court ceased on the filing of the petition and bond, and the power and authority of the referee under the order of reference then came to an end also. The subsequent order of removal was not the cause of the court's losing its jurisdiction. At most, that was only a convenient mode of manifesting its acceptance of the petition and bond, as required by section 3 of the act of 1875, and took effect by relation from the date of filing the same.

In *Osgood* v. *Chicago, etc., Co.* 6 Biss. 344, Judge DRUMMOND held that a petition and bond filed in vacation, for removal of a cause, had the like effect as one filed in term-time, and that upon the filing of the same the jurisdiction of the state court ceased. And in *Railroad Co.* v. *Mississippi,* 102 U. S. 141, Mr. Justice HARLAN, speaking for the court, said: "It [the state court] was entirely without jurisdiction to proceed after the presentation of the petition and bond for removal." To the same effect is the ruling in *Kern* v. *Huidekoper,* 103 U. S. 492; *Railroad Co.* v. *Koontz,* 104 U. S. 14; and *Steam-ship Co.* v. *Tugman,* 106 U. S. 122; [1 Sup. Ct. Rep. 58.] And it matters not that the parties appear to have gone before the referee and engaged in taking this testimony in pursuance of a notice from him to that effect, after the presentation of the petition and bond. This may have been done, so far as the defendant is concerned, for divers reasons; and having been required by the referee to appear, he was entitled to do so, if he thought best, and lost no right by so doing. His action in this respect cannot have the effect to restore the jurisdiction of the state court. *Ry. Co.* v. *Koontz, supra; Ins. Co.* v. *Dunn,* 19 Wall. 222.

The second ground of the motion is a novel one. This case, it is admitted, arises under an act of congress. Both the claim of the plaintiff and the defense of the defendant, apart from that of the lapse of time, so arise,—the former under the swamp land act of March 12, 1860, (12 St. 3,) and the latter under the pre-emption act.

The case made by the plaintiff is clearly one of national jurisdiction, and removable to this court by either party under the first clause of section 2 of the act of 1875. But admitting this, the plaintiff contends that the defendant, by the use of a conjunctive or literal denial in his answer, as that the land is not swamp *and* overflowed, or that the defendant's proof of compliance with the pre-emption act was not false *and* fraudulent, has impliedly admitted that the land is either swamp or overflowed, and that the proof is either false or fraudulent, and therefore has not denied that the land is either swamp or overflowed, or the proof false or fraudulent, but only that the former is not both swamp *and* overflowed, and the latter false *and* fraudulent; and that, therefore, he has admitted the plaintiff's case, and therefore there is no issue in the pleadings involving the construction of an act of congress, and therefore there is no case for removal; citing *Scovill* v. *Barney,* 4 Or. 288; *Moser* v. *Jenkins,* 5 Or. 447; *Kuhland* v. *Sedgwick,* 17 Cal. 123; *Woodworth* v. *Knowlton,* 22 Cal. 164. But I think it is a mistake to say that the right of removal in this case depends upon the nature of the issues or defense made by the defendant's answer. As soon as the suit was commenced, and before there was any defense made in the case, or it was known there would be any, the right of removal attached, and continued until the time for filing the petition for removal expired. It may be that after a failure to answer, which in effect confesses the plaintiff's cause of action, or an answer which expressly confesses it, that the right of removal is gone, there being no longer any dispute or contention between the parties. The admission takes the place of a "trial," and a petition for removal must precede the one as well as the other. But so long as the answer does not expressly admit the plaintiff's cause of action, but makes or attempts to make a defense thereto, however unskillfully stated or insufficient in law, the right of removal is not prejudiced thereby. Nor do I think that the allegation that this land is "swamp and overflowed" should be classed, for the purpose of denial, in the same category with a simple allegation as to time or amount, or of the commission of an act unlawfully or with a particular interest, in which case a mere literal denial of the allegation is not deemed sufficient to controvert it.

Besides, the phrase "swamp and overflowed," as defined by section 2 of the Arkansas swamp land act of 1850, is merely the equivalent of the phrase "wet and unfit for cultivation," and therefore land which is too "wet" for cultivation is "swamp and overflowed," whether the water flows over it or stands upon it. In this sense the adjectives "swamp" and "overflowed," taken together, qualify the noun "land" in but one particular,—express but one fact concerning it,—that is, it is too wet for cultivation, and this may be traversed by a literal denial. As what is false is not necessarily fraudulent, particularly as to the person who may use the falsehood without being aware of its falsity, the adjectives "false" and "fraudulent" may express dif-

ferent qualities of the noun "proof," and therefore a literal denial of the allegation that the defendant's proof of compliance with the pre-emption act was "false and fraudulent," is not well controverted by the literal denial thereof in his answer. But admitting that these denials are insufficient, and that the plaintiff is entitled to a judgment on the pleadings, or a decree on the bill and answer, still the defendant was entitled to remove the cause into this court, and have that question, as well as any other that may arise in it, determined here.

A motion was made by the plaintiff in the state court for a judgment on the pleadings, after the filing of the petition for removal, but the court does not appear to have taken any notice of it, for the reason, presumably, that its jurisdiction over the case, except, perhaps, to give direction to the clerk for the delivery of the copy of the record, was gone. Again, the defendant may ask leave to amend his answer in this particular, if it is thought material, and no court would refuse such an application, if made before the trial or motion for judgment was decided. Besides, upon an application for judgment on the pleadings, or a hearing of the cause on bill and answer, the question will arise as to whether the United States, by the proviso to section 1 of the act of 1860, did not reserve to itself the right to dispose of any swamp and overflowed land in Oregon, under any law theretofore enacted,—as the pre-emption law,—at any time before a patent was issued therefor to the state, as provided in section 2 of the Arkansas act of 1850; and whether the condition of this land, as to being swamp and overflowed or not, has not been conclusively determined against the plaintiff by the department of the interior in receiving and allowing the application of the defendant to enter the same under the pre-emption act, and the issue of a patent thereon to him. *Cahn* v. *Barnes*, 7 Sawy. 52; [S. C. 5 FED. REP. 326.]

On the argument counsel for the plaintiff made another point that is not in the motion; namely, that the application for removal of the cause having been made after the hearing on the demurrer to the complaint, and the order overruling the same, was not made before the "trial" of the cause, and therefore came too late. It may be admitted that a hearing and determination of a cause upon a demurrer to the complaint is a "trial" of the same within the meaning of that term as used in section 3 of the act of 1875. But if, upon the hearing of the demurrer, the same is overruled, but, instead of the courts giving judgment upon the complaint for the plaintiff, it makes an order allowing the defendant to answer or plead to the merits, I do not think there has been a "trial" of the cause within the meaning of the act, so as to preclude the right of either party to apply for a removal of the same. The "trial" contemplated by the act is a final one, in which the cause, as far as the judgment of the state court is concerned, is ended. In the act of 1866, *supra*, the language used is "trial or final hearing," and in that of 1867, *supra*, it is "final hearing or trial." In the Revised Statutes, § 639, subs. 2 and 3, the

language of the first act is used.   But I regard the difference between them as one merely of collocation of words and not sense.   "Trial" is a common-law term, and is commonly used to denote that step in an action by which issues or questions of fact are decided.   It was also formerly applied to the hearing on a demurrer, as the trial of an issue of law.   It is always final unless the verdict or result is set aside for cause.   "Hearing" is an equity term, and is properly applied to the argument and consideration of a case at the several stages of its orderly progress, but when applied to that upon which the case is absolutely determined,—disposed of,—it is qualified by the word "final."

In *Ins. Co.* v. *Dunn, supra,* it was held, under the act of 1867, that where, by the local law, the defendant, after a verdict against him, was absolutely entitled to a "second trial," on giving bond to abide the judgment of the court, and he did so, that he might thereafter remove the cause to the circuit court.   In delivering the opinion of the court, Mr. Justice SWAYNE said: "It [the statute] was intended to permit the removal at any time before a hearing *or trial,* final in the cause as it stood when the application for the transfer was made."

The act of 1875 simply uses the word "trial,"—providing that the petition for removal of a cause shall be filed "before the trial thereof," whether it is an action at law or a suit in equity,—and should be construed as only applicable to that step or proceeding in the progress of the case which results in a final disposition of it.   And so, in my judgment, when a cause is submitted to a jury and no verdict is given, or the one given is set aside, or when a cause is heard upon a demurrer, and no final judgment or decree is given thereon, but leave is given to amend or answer over, as the case may be, there is no "trial" within the meaning of the act, and therefore, at any time before a trial of an issue of fact or law which results in a final disposition of the case, and during the term at which such trial may be had, a party entitled to remove the same may file his petition and bond therefor with effect.   See, also, the cases of *Yulee* v. *Vose,* 99 U. S. 544; *Removal Cases,* 100 U. S. 473; and *Hewitt* v. *Phelps,* 105 U. S. 395.

The motion to remand is denied, and also the motion to file the testimony taken before the referee after the petition and bond for removal were filed.