*State of Maryland v. Bashunn Christopher Phillips* (No. 49, September Term, 2017)
Opinion by Wilner, J.

 The defendant in a criminal case moved *in limine* to preclude the State from offering certain evidence on the ground that it was unreliable under *Reed v. State*, 283 Md. 374 (1978).  A trial judge granted the motion, and the State sought in banc review, which was untimely in two different respects.  Nonetheless, the Circuit Administrative Judge designated an in banc court, which reversed the trial judge's ruling, whereupon the defendant filed an appeal to the Court of Special Appeals.  That Court denied the State's motion to dismiss and held that the in banc panel was without jurisdiction to consider the State's request.  The Court of Appeals granted *certiorari,* affirmed the judgment of the Court of Special Appeals, and HELD

(1) Rule 2-551 sets forth and governs the procedures for seeking in banc review of a point, question, or judgment entered or decided by a circuit court.
(2) To be entitled to such review:
  (i)  The point, question, or judgment must be reserved by making an objection in the manner provided by Rule 2-517 or Rule 2-520 and during the sitting of the court;
  (ii)  The point, question, or judgment must be one that the party would have the right to appeal to the Court of Special Appeals or Court of Appeals upon the entry of final judgment or otherwise allowed by law; and
  (iii)  The notice of in banc review must be filed within 10 days after entry of final judgment or, if a motion is made under Rule 2-533, 2-534, or 2-535, within 10 days after resolution of that motion.  A notice that is not in compliance with that requirement is a nullity.
(3) A party who does not seek in banc review may appeal to the Court of Special Appeals from an adverse decision of the in banc panel, but must do so within the time allowed for appeals.
(4) A decision by the in banc court constitutes a final judgment of that court.

IN THE COURT OF APPEALS

OF MARYLAND

No. 49

September Term, 2017

STATE OF MARYLAND

v.

BASHUNN CHRISTOPHER PHILLIPS

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Getty
Wilner, Alan M. (Senior Judge, Specially
Assigned)

JJ.

Opinion by Wilner, J.

Filed: February 20, 2018

We granted *certiorari* in this case to review, again, the manner in which Article IV, § 22 of the Maryland Constitution, providing for an in banc appeal from a "decision or determination of any point or question" by a Circuit Court judge, is intended to operate. In the end, our decision will be based on the wording of § 22 and Md. Rule 2-551. To be faithful to the standards for interpreting Constitutional provisions, however, we will need to review in some detail the origin and development of § 22 and some of our prior case law even though, regrettably, that lengthens the Opinion.

BACKGROUND

On December 10, 2013, respondent Phillips allegedly murdered Shar'ron Mason. It appears that he was not arrested until July 18, 2014, at which time an indictment was returned charging him with first-degree murder and associated firearm violations. In August 2015, he filed a motion *in limine* to exclude certain documents and testimony that the State intended to offer at trial to establish the approximate location of Phillips's cell phone on the date of the crime. The motion asserted that the evidence was unreliable, irrelevant, and unduly prejudicial. The crux of Phillips's argument was that the methodology employed by the State's experts as the basis for the location evidence was a novel scientific one that had not received general acceptance in the relevant scientific community and therefore was inadmissible under *Reed v. State*, 283 Md. 374 (1978).

Following a hearing conducted over the course of four days, Judge Silkworth, on February 12, 2016, granted the motion and entered an order excluding the documents and testimony. He concluded that two of the State's expert witnesses were not part of the

relevant scientific community and that the methodology they espoused had not gained general acceptance within that community.

Six days later, on February 18, the State filed a request for in banc review of that order. The request, itself, was bare-boned. It noted the State's objection to the order but listed no points or questions to be reviewed and gave no reasons why the Order was incorrect. That was not done until the State filed its memorandum on March 18, 2016, in which it listed seven specific questions for review.

The State's request triggered a flurry of activity. Apparently in anticipation of the in banc request, the State asked that trial, set for March 9, 2016, be postponed, and it was. On February 24, Phillips moved to dismiss the in banc request; the motion was denied, subject to reconsideration at a later time. On March 3, 2016, the county administrative judge appointed three judges of the court to constitute the in banc court and designated Judge Mulford to chair the panel. On March 14, Judge Mulford entered an Order that directed the State to prepare a transcript of the proceedings before Judge Silkworth and set times for the filing of memoranda.

The memoranda were filed, and the hearing before the in banc panel took place on May 17, 2016. On June 3, the panel filed a memorandum and Order denying a renewed motion to dismiss and reversing Judge Silkworth's Order excluding the evidence at issue. On July 6, 2016, trial of the case was postponed to February 13, 2017.

We are not concerned here with the substance of the panel's decision – whether it was right or wrong – but rather with its own jurisdiction and its analysis of the State's

2

right to pursue the in banc appeal as it did. The panel acknowledged the obvious fact that no judgment had yet been entered in the case and that, in any event, the State had no right under Title 12 of the Courts Article to appeal to the Court of Special Appeals from the grant of Phillips's motion *in limine* even if there were a final judgment. Relying on some language in *Board v. Haberlin*, 320 Md. 399 (1990) and the analysis of the Court of Special Appeals in *Berg v. Berg*, 228 Md. App. 266 (2016), however, the panel found that not to be an impediment. The case before it, the panel concluded, "is an extraordinary instance in which the legislature failed to address the ability of the State to take an *in banc* from [an] evidentiary determination amounting to both an abuse of discretion of the trial court and an error of law" and, reading Art. IV, § 22 in light of *dicta* in *Berg,* "shows the intention of the legislature to provide an avenue of review for situations akin to the case at hand." The panel's Order denied Phillips's motion to dismiss, reversed the evidentiary ruling of Judge Silkworth, and, at least implicitly, remanded the case for further proceedings, which have yet to occur.

Phillips appealed to the Court of Special Appeals, which reversed the judgment of the in banc court. *Phillips v. State*, 233 Md. App. 184 (2017). As he had before the in banc panel, Phillips argued that Art. IV, §22 permits in banc review only when a direct appeal is allowed and that the State had no such right. The State responded that an in banc review of a trial judge's decision is not an "appeal" but a broader right of "review," and that its right to that review, founded on Art. IV, § 22, is not limited by the statutory appeal provisions in Title 12 of the Courts Article. Apart from that, the State moved to

3

dismiss the appeal on the ground that because the panel's order was an interlocutory one and no judgment had yet been entered, Phillips had no right to appeal it.

The intermediate appellate court dealt first with the State's motion to dismiss the appeal to it, denying the motion on the ground that the decision of the in banc panel, which resolved the only issue before it, constituted a final judgment of that court and therefore was appealable by Phillips. Relying on this Court's case law and some of its own decisions, the Court of Special Appeals rejected the State's argument that the right to in banc review is broader than the right to appeal to the Court of Special Appeals or to this Court and concluded instead that "a litigant may not appeal to an in banc panel when the litigant could not note an appeal to this Court successfully." *Id*. at 205. Because the State had no right to appeal Judge Silkworth's ruling on the motion *in limine*, the Court held that the in banc panel was without jurisdiction to consider the State's request for review.

THE ISSUES

Two composite issues are presented by the parties: (1) whether a party, in this case the State in a criminal case, has the right under § 22 to seek in banc review of a trial judge's ruling that would not be immediately appealable to the Court of Special Appeals or this Court under Md. Code, Courts Article § 12-301 or other law; and (2) whether Phillips had the right to appeal the in banc decision, which adjudicated an interlocutory ruling of the trial court that could not have been immediately appealed directly to the Court of Special Appeals. We shall add a third issue that most clearly is presented and

4

seems to have been ignored up to this point but that is determinative: whether the in banc court was lawfully created in this case.

DISCUSSION

**Introduction**

Art. IV, § 22 was inserted into the Maryland Constitution by the Constitutional Convention that met in 1867. Although the State places its emphasis on what it perceives to be the plain language of that section, both parties attempt to divine what the delegates to that Convention intended the section to mean. It is an exercise that this Court and the Court of Special Appeals have engaged in as well over the years.

The standards to be applied in the construction of Constitutional language were confirmed recently in *Bd. of Elections v. Snyder*, 435 Md. 30, 53-54 (2013). We said there that our task "is to discern and then give effect to the intent of the instrument's drafters and the public that adopted it" but cautioned that "because the Constitution was carefully written by its drafters, solemnly adopted by the constitutional convention, and approved by the people of Maryland, courts lack the discretion to freely depart from the plain language of the instrument." *Id.* at 53.[1] Implementing that principle, we added that "[w]here the provision at issue is clear and unambiguous, the Court will not infer the

---

[1] We accept the *Snyder* Court's assumption regarding the care with which Constitutional language is drafted as a general proposition but not necessarily as absolute truth. The fact that there have been so many appellate Opinions, occasionally with dissents and concurring Opinions, attempting to determine the meaning of the language in § 22 suggests that the language of that section was not "carefully written."

5

meaning from sources outside the Constitution itself." *Id.* If the Constitutional provision is ambiguous, "we approach its interpretation the same way we interpret statutory language, and we generally apply the same principles." *Id.* at 54. In that regard, the Court, quoting from *Johns Hopkins v. Williams*, 199 Md. 382, 386 (1952), observed:

> "Courts may consider the mischief at which the provision was aimed, the remedy, the temper and spirit of the people at the time it was framed, the common usage well known to the people, and the history of the growth or evolution of the particular provision under consideration."

In *Reger v. Washington Co. Bd. of Ed.*, 455 Md. 68, 96 (2017), quoting from *Phillips v.* State, 451 Md. 180, 196-97 (2017), we added that if a statute is clear and unambiguous, "we need not look beyond the statute's provisions and our analysis ends" but that "[o]ccasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language," including "archival legislative history."

Archival legislative history includes legislative journals, committee reports, fiscal notes, amendments accepted or rejected, the text and fate of similar measures presented in earlier sessions, testimony and comments offered to the committees that considered the bill, and debate on the floor of the two Houses (or the Convention). *MVA v. Lytle*, 374 Md. 37, 57 (2003); *Boffen v. State*, 372 Md. 724, 736-37 (2003). The views expressed by individual members of the legislative (or Constitutional) body as part of the debate may be considered, subject to the critical caveat that those views may not have been shared by anyone else and, to that extent, may be irrelevant.

Those principles apply in full force when the provision at issue is the same, or at least substantially the same, as when initially adopted. We look then to the composite intent of the delegates (or legislators) that adopted it from the language they used and, where appropriate, relevant external sources of the kind noted. When the provision at issue has subsequently been amended, however, and the amendments bear on the proper construction of the provision as it currently exists, it is the intent of the amenders that may become paramount. Art. IV, § 22 has been amended twice since 1867, the principal one being in 2006. We need to look, therefore, at the overall development of the provision and most particularly at the 2006 amendment. When we examine the case law dealing with § 22, we need to keep in mind what the Court was construing at the time.

### The 1867 Convention and the Legislative Response

The 1867 Convention was the third in 17 years, and many of the issues involving the Judiciary that had been debated in the preceding two – in 1850 and 1864 – were back. The Convention that met in 1850 was dominated by the debate over slavery, a desire to put the State's deplorable fiscal condition in order, and a restructuring of the State government. A major part of that restructuring was of the Judiciary. The General Court, the county courts, and the Chancery Court that existed under the 1776 Constitution were abolished and replaced by (1) a Court of Appeals consisting of a Chief Justice and three Associate Justices, one from each of four judicial districts, (2) division of the State into eight judicial circuits from each of which one judge was to be elected and designated as a Circuit Court judge, who was required to sit at least twice a year in each county within

7

the circuit, and (3) three courts in Baltimore City – a Court of Common Pleas, a Superior Court, and a Criminal Court, each to consist of one judge. This clearly was a system in which it was expected that trials would be presided over by one judge.

The 1864 Convention also did some restructuring of the Judiciary. It expanded the Court of Appeals to a Chief Justice and four Associate Justices, created a Circuit Court in each county and, with respect to the Circuit Courts, divided the State into 13 judicial circuits and, in 12, provided for one judge in each circuit. In Baltimore City, which was the Thirteenth Circuit, there were to be four courts – the three provided for in the 1851 Constitution plus a Circuit Court, each court to consist of one judge. This also was a one-judge system.

One of the issues in the 1867 Convention was whether to increase the number of judges within the circuits so that trials could be held before three judges rather than just one. That issue had arisen early in the 1864 Convention, when the Committee on the Judiciary was directed to consider (1) dividing the State into 10 judicial districts, each consisting of two counties, (2) having two Circuit Judges and one judge of the Court of Appeals within each circuit, and (3) having two terms per year in each county in which the two Circuit Judges and the Court of Appeals judge would sit, "so that each Court shall be held by three judges except in cases of illness or other necessary absence." *The Debates of the Constitutional Convention of the State of Maryland* (1864) at 72. As noted, that did not carry, but it resurfaced in 1867.

8

The 1867 Convention was peculiar in at least one important respect. Unlike the 1850 and 1864 Conventions, the 1867 Convention did not keep an official record of the speeches and debates. Most of what we know about what was said by the delegates was cobbled from contemporaneous newspaper accounts, some of questionable reliability. In 1923, Philip B. Perlman published what he called *Debates of the Maryland Constitutional Convention of 1867* (hereafter *Perlman*), which was taken mostly from the morgue files of the Baltimore *Sun* – Perlman's former employer.[2] That book has become the principal, though incomplete, source for what occurred and was said at the Convention.

---

[2] Mr. Perlman's first career was as a reporter, and later City Editor, for the Baltimore *Evening Sun*. He later left journalism, went to law school, and became a prominent Maryland attorney who was active in City, State, and national political affairs. In an Introduction to his 1923 book, he contended that the *Sun* reporter who covered the Convention "was acknowledged to be one of the best newspaper men in the country".

That view is not shared by John J. Connolly, Esq., a Maryland attorney who wrote a well-researched law review article specifically dealing with Art. IV, § 22. *See Maryland's Right of In Banc Review,* 51 Md. L. Rev. 434 (1992). Mr. Connolly notes:

"The members [of the 1867 Convention] decided that $2.50 per day was too much for the State of Maryland to spend on a professional reporter. Additionally, some of the members believed that the newspaper reporting of the early days of the convention had been so superior that an official reporter would add little. Consequently, the principal contemporaneous authority cited today, [Philip] Perlman's *The Constitution of 1867*, is nothing more than a collection of newspaper reports of the convention printed by *The* [Baltimore] *Sun.* This is unfortunate because newspapers at the time could be quite partisan in their views of the convention, and because, as *The Sun* itself now seems to admit, its man at the convention was not the most thorough reporter who attended. The result is that searching for original intent in the Maryland Constitution is uncertain and often disappointing, particularly on a provision as unclear as section 22." *Id.* at 443-44.

Mr. Connolly views further reform of the Maryland judicial system as one of the principal issues at the Convention, a major aspect of which was increasing the number of Circuit Court judges, replacing the "one judge" system, and allowing trials before a panel of three judges. 51 Md. L. Rev. at 444-45. The Convention's Committee on the Judiciary seemed to waffle on that issue. It proposed returning to eight judicial circuits, each (except the Eighth, which was Baltimore City) to consist of a Chief Judge and two Associate Judges. They were to hold at least two terms of the Circuit Court in each county but one judge would constitute a quorum for the transaction of any business. *See Perlman* at 266. That seemed to allow for trials before either one judge or up to three.

The Committee proposed a very different system for Baltimore City, where there was to be a Supreme Court of Baltimore City, to consist of a Chief Justice and five Associate Justices. Those judges would be assigned to sit in the other courts – the Superior Court, the Court of Common Pleas, the Baltimore City Court, the Circuit Court, the Criminal Court, and the Orphans' Court -- which would sit in "general terms" of not less than three judges and "special terms" of one or more judges. The Supreme Court would have the power to make Rules for all of the City courts and for the "granting, hearing, and determination of motions for a new trial . . . or upon motions in arrest of judgment, or upon any matters of law by said judge or judges determined." *Id.* at 268.

10

That was not what ultimately was adopted, but it served as a backdrop for what became § 22.[3] According to Connolly, referencing a Baltimore *Sun* article, Delegate Archer filed a Minority Report proposing twelve judicial circuits, with one judge for each circuit and complained about the expense of having three judges. Two days later, again according to Connolly, Delegate Syester, favoring the three-judge system, proposed that the three judges provided for in the Committee on the Judiciary Report "also hold a court of revision in each district, and to this the poor man could take an appeal when he could not afford to go up to the Court of Appeals of the State." 51 Md. L. Rev. at 451. According to Connolly's source, access by poor people was not Syester's sole concern; he also expressed concern (1) that "appeals" were not then allowed in criminal cases and that "a criminal defendant's life should not rest solely on the decision of one judge," and (2) that a motion for new trial was not an effective means of correcting a judge's error, for it required the judge to admit that he was in error. *Id.* at 452.

Though obviously concerned about one-judge trials, Syester, according to Connolly, understood the additional fiscal burden of requiring three-judge trials and thus proposed instead a three-judge court of revision that would be available "especially when appellate review was not available or was difficult to obtain." *Id.* at 453. In a speech to the Convention, Syester said that "[i]t is intended that all ill-considered rulings of one

---

[3] A number of changes were made to that draft, particularly with respect to Baltimore City, but the adopted version still regarded one judge as a quorum for the transaction of any business. In Baltimore City, the Supreme Court was changed to the Supreme Bench but § 32 permitted the judges assigned to the several courts to "sit either, separately, or together, in the trial of cases."

11

judge shall be reserved at the instance of the party, for consideration of the three judges."
*Id.*, quoting from a report of Syester's speech in an August 2, 1867 article in *The Hagerstown Mail*.

Connolly tells us that debate over a one-judge vs. a three-judge system continued all that day. The following Monday, Delegate Richard Alvey, a colleague of Syester from Washington County and later a judge (and ultimately Chief Judge) of this Court, introduced what eventually became § 22. The initial proposal was that a litigant could choose in banc review or an appeal to the Court of Appeals "where by law an appeal will lie," suggesting, in Connolly's view that in banc review might lie where an appeal would not. 51 Md. L. Rev. at 453, 456. Alvey, himself, later amended that version, which was amended as well at the instance of others. When §22, as adopted, is read in conjunction with what became Art. IV, § 21, what emerged seemed to be a recognition that the norm would be one-judge trials, although two-judge or three-judge trials were possible, and that in banc review by three judges of the circuit would be allowed only where the trial was conducted by fewer than three judges.

Section 22, as ultimately adopted, provided the following, which we shall break up for ease of reading:

> "Where any Term is held, or trial conducted by less than the whole number of Circuit Judges, upon the decision, or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for consideration of the three Judges of the Circuit, who shall constitute a Court in *banc* for such purpose."

12

"[T]he motion for such reservation shall be entered of record, during the sitting, at which such decision may be made."

"[T]he several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points, or questions to the Court in *banc*."

"[T]he decision of the said Court in *banc* shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points, or questions were reserved; but such decision in *banc* shall not preclude the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which appeal, or writ of error to the Court of Appeals may be allowed by Law."

"The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of Justices of the Peace, nor to criminal cases below the grade of felony, except when punishment is confinement in the Penitentiary."

"And this Section shall be subject to such provisions as may hereafter be made by Law."

With respect to the third paragraph above, permitting local Circuit Court Rules governing the mode and manner of presenting points or questions to the in banc court, we note that the Court of Appeals had not yet been authorized to adopt Rules of procedure, other than Rules governing appeals to that Court and Rules governing equity procedure. *See* Art. IV, §18 (1867 Constitution). General rule-making authority for the trial courts was not Constitutionally conferred on the Court until 1944. We have not attempted to trace what, if any, local Rules were adopted by the various Circuit Courts over the 139 years they had the authority to promulgate such Rules, although it appears that some of the circuits apparently did adopt local Rules.[4]

---

[4] In April 1953, the Court's Standing Committee on Rules of Practice and Procedure (Rules Committee) directed the Reporter to the Committee to make a study of how and to what extent § 22 was being used. In his Report, rendered the following September, the

With respect to the last paragraph, there was a prompt legislative response. In its next (1868) session, the General Assembly enacted 1868 Md. Laws, Ch. 441 that set forth a more detailed procedure for implementing § 22 in light of the Constitutional reorganization of the Circuit Courts. It is mostly of historical interest now, although, as we shall note later, its requirement that points or questions reserved for in banc review be taken "by means of exceptions" did play a role in an important ruling by this Court 120 years later, *Montgomery County v. McNeece*, 311 Md. 194 (1987). The law ultimately became codified as sections of Art. 75 of the Code, which were repealed after this Court adopted Rule 510 (now Rule 2-551), effective January 1, 1957.

Keeping in mind that, at the time, each circuit (other than Baltimore City) had three judges, the 1868 law gave a party the option of (1) having the reserved point or question decided by the remaining two judges qualified to sit, (2) having the action removed to the court of another circuit, or (3) taking an appeal to the Court of Appeals.[5]

Reporter said that he had addressed a letter to the Circuit Court clerks regarding whether their dockets disclosed any utilization of the in banc provision. Replies were received from the first seven circuits and, from those replies, he said that "it appears that no utilization of this procedure has taken place in the last ten to twenty years," although several replies indicated that "local rules made provision for the mode and manner of presenting questions to the Court en banc." Judge Clark, from the Fifth Circuit, concluded that "[t]his provision has been so seldom used in this Circuit that it is practically a dead letter." Rules Committee Archives regarding Rule 2-551. When the issue was revisited in 1964, the Committee was advised that there had been an increase in the use of the procedure in some counties, particularly Prince George's County, but that the procedure provided in the then-current Rule (Rule 510) "was not adequate or workable." Rules Committee Minutes of April 29, 1965. In 1973, when the issue was again revisited, Judge J. Dudley Digges reported that 50 to 75 cases a year were submitted to in banc review in the Seventh Circuit.

Points or questions reserved for in banc review were to be taken by means of exceptions, to be reduced to writing and signed and sealed by the judge or judges before whom the case was to be tried. *See* 1951 Md. Code, Article 75, §§ 131-133.

## The Case Law

The most relevant case law is found in the more recent cases, but some of the early ones are important in fleshing out the meaning and contours of § 22 and providing a base for the later cases and Rules, so we shall start with some of them.

The first case to reach this Court touching on in banc review was *Roth v. House of Refuge*, 31 Md. 329 (1869). The case arose not from § 22 but from the analogous provisions relating to the Supreme Bench of Baltimore which, as noted above, had jurisdiction to review, in banc, motions for new trial and other matters of law determined in the other Baltimore City courts. The case involved two minors who had been committed by a justice of the peace to the House of Refuge. The fathers of the boys filed petitions for habeas corpus before a judge assigned to the Baltimore City Court. The judge granted the writs and ordered the boys released, whereupon the House of Refuge, through a motion for new trial, sought review of those decisions by the Supreme Bench. That court reversed the judge's ruling, and the petitioners appealed. The issue was whether the Supreme Bench had jurisdiction in the matter.

---

[5] Later, as more judges were added in some of the circuits, the question arose of whether an in banc court would or could consist of all of the judges in the circuit, which could be more than three.

15

Citing the Constitutional provisions that were nearly identical to those in § 22, the Court, in an Opinion by Judge (and former Convention delegate) Alvey, concluded that the relationship between the Supreme Bench and the other City courts "is that of a court in *banc,* where parties can have questions of law deliberately considered by at least three judges, without the delay and expense of an appeal to the Court of Appeals, and where they can have the benefit of such review in many important cases where an appeal would not lie." *Id.* at 333. The Court held that, notwithstanding that no appeal would lie to *it* from the denial of habeas corpus, the Supreme Bench did have jurisdiction and therefore dismissed the appeal from its ruling.[6]

The importance of the case, in its actual holding as well as in its language, lies in the Court's recognition, albeit in the context of the Constitutional provisions dealing with the Supreme Bench, that in banc review was permissible even where no appeal would lie to the Court of Appeals. Phillips challenges that conclusion.

The first case to reach this Court that directly involved § 22 was *Shueey v. Stoner*, 47 Md. 167 (1877). The import of that case was simply to make clear that the provision in § 22 that the decision of the in banc court "*shall be the effective decision in the*

---

[6] This Court has held on a number of occasions that an appeal from the grant or denial of a writ of habeas corpus is permissible only if authorized by statute, that the right is not included in Courts Art. §12-301, and that there appear to be only four statutes that permit such an appeal – Crim. Procedure Article, §9-110 (extradition cases); Courts Article, § 3-707 (bail cases); Courts Article, § 3-707 (writ based on the unconstitutionality of the statute under which the petitioner was convicted); and Crim. Procedure Article, §7-107, (where the writ is sought for a purpose other than to challenge the legality of a conviction or sentence). *See Gluckstern v. Sutton*, 319 Md. 634, 652 (1990); *Simms v. Shearin*, 221 Md. App. 460, 469 (2015).

16

*premises and conclusive* as against the party at whose motion said points or questions were reserved" means what it says. (Emphasis in original). *Id.* at 170. This Court thwarted an attempted end run around that provision through a collateral attack on the ruling of an in banc court, even though the Court expressed its disagreement with the decision of the in banc court.

Next in line was *Costigin v. Bond*, 65 Md. 122 (1886), an ejectment action. On March 31, a jury found for the plaintiff. On April 2, the defendant filed a motion for new trial, which was overruled by the judge. The defendant then sought review of that ruling, as well as of the judge's denial of his motion in arrest of judgment, before an in banc court. The in banc court overruled the plaintiff's motion to dismiss the appeal and reversed, whereupon the plaintiff filed an appeal to this Court.

This Court reversed the ruling of the in banc court, not on the merits but on the untimeliness of the plaintiff's reservation of the points for review by the in banc court. Section 22, the Court said, was "in substitution of an appeal to the Court of Appeals" and made "a considerable alteration in the law on this subject," but "[t]he change is not to be extended by construction beyond the terms of the Constitution." *Id.* at 124. Section 22 required (and still requires) that the reservation of the point or question be entered during "the sitting" at which the decision was made, which the Court interpreted to mean before the court adjourned for the day. As that was not done, the in banc court had no jurisdiction. The precise holding was limited to the required time for reserving points or

questions for in banc review, but the broader pronouncement was that § 22 would be limited to its terms.

*Medical Examiners v. Steward*, 207 Md. 108 (1955) confirmed the principle announced in *Shueey*. The Board of Medical Examiners revoked the medical license of Steward. On judicial review, the Circuit Court reversed that decision on the ground that the Board had been improperly constituted and remanded the matter to the Board. The Board appealed to this Court, which dismissed the appeal on the ground that no appeal was permissible by either party. *See Bd. of Med. Examiners v.* Steward, 203 Md. 574 (1954).[7]

The Board reconsidered the matter but again revoked the license. Again, the Circuit Court reversed. This time, the Board timely moved to reserve points for consideration by an in banc court, which dismissed the appeal. This Court then dismissed the Board's appeal to it, holding that the in banc court had jurisdiction to determine its own jurisdiction and that, *if it had that right to decide what it did*, "no question can be made in this court on the ground of want of jurisdiction, and whether it rightly decided what it did decide can only be reviewed by this court when the right of review is given to

---

[7] The basis of this Court's decision was the "well settled rule that the Court of Appeals cannot entertain an appeal from any order or judgment of the Circuit Court sitting as an appellate tribunal under special statutory authority where no right of appeal is expressly given, except in cases where the Court exceeded its jurisdiction." *Id.* at 580.

it." *Id*. at 111. Citing *Shueey* and *Costigin,* the Court held that the right had *not* been given to it.[8]

*Liquor Board v. Handelman*, 212 Md. 152 (1957) added another element in the construction of §22. The principal holding was that three judges of a Circuit Court could sit together to consider further proceedings in a judicial review action after the judge who had made a decision timely reopened the case, without constituting an in banc court, especially since in banc review was not possible under the circumstances. One of the reasons that in banc review was not permissible was because "as a result of [the judge] reopening [the case] his order . . . did not finally decide any question of law or anything else" and that "review by a court *in banc* is a form of appeal and there can be no appeal from a non-existent judgment or order." *Id.* at 160-61. The clear import of that is that, although points or questions must be reserved for in banc review during the sitting in which they were made, they must be final before that review can occur.

*Buck v. Folkers*, 269 Md. 185 (1973) filled in a gap involving the right of the adverse party in an in banc appeal to appeal to this Court. In a declaratory judgment action, the Circuit Court found in favor of the defendant. The plaintiff timely sought in

---

[8] The actual basis of this Court's decision is not altogether clear. It could have been based on the same principle applied in the earlier case – that because the Circuit Court was acting as a special appellate body, no further appeal was allowed – or it could have been based on §22 directly, namely that the in banc court's decision was the "effective decision in the premises," and the party who sought that review – the Board – had no further right of appeal. Both principles were mentioned in the Opinion. Although dismissing the appeal, the Court did reach the substantive issue of whether the in banc court had jurisdiction in the matter, suggesting that its dismissal was based on the statute, as it had been earlier, rather than on § 22.

banc review, and the in banc panel remanded the case for a new trial. The retrial resulted in a judgment for the plaintiff, and the defendant then appealed to this Court, complaining about the remand. We concluded that, although the defendant had the right to appeal from the decision of the in banc court, he needed to do so within 30 days after that court's decision. His appeal was untimely and was dismissed.

We come now to three cases decided together on the same day in July 1979 – the companion cases of *Washabaugh v. Washabaugh* and *Daniel v. Steele's Carpet Service, Inc.,* 285 Md. 393 (1979), and *Estep v. Estep*, 285 Md. 416 (1979). As a preface, we note that, in 1978, in order to take account of the creation of the District Court and the abolition of justices of the peace seven years earlier, § 22 was amended to substitute a reference to the District Court for the reference to justices of the peace. That amendment, which was part of a comprehensive clean-up of obsolete provisions in the Constitution, has no bearing on the viability of the earlier decisions or on the issues before us in this appeal.

The sole issue in *Washabaugh* and *Daniel* was whether the fact that § 22 did not then operate in Baltimore City rendered the appeal procedure under it unconstitutional under the equal protection clause of the Fourteenth Amendment. Nearly the entire Opinion focused on that issue, the Court ultimately holding that the disparity did not deny equal protection. That issue became moot a year later, when, by Constitutional Amendment, the Supreme Bench and the six satellite courts in the City were consolidated

20

into one Circuit Court for Baltimore City, putting the City on a par with the counties. Section 22 now does apply in Baltimore City.

All that is left of the Opinion that is relevant now is Judge Digges's recounting of some of the earlier case law and his perception that "[a]lthough the reason for section 22's inclusion in the constitution is not altogether clear, it appears to have been, as its commonly recognized nickname of 'the poor person's appeal' suggests, a response to a fear of the framers of the Constitution of that year that the distance to Annapolis and the concomitant delay and expense incident to prosecuting an appeal in the Court of Appeals would discourage or preclude many litigants from seeking justice by means of appellate review." *Id.* at 396. As we have indicated above, that thought was expressed at the 1867 Convention and probably was a factor in the addition of § 22, but likely was not the only one. The Court later recognized that in *Bienkowski v. Brooks*, 386 Md. 516, 533 (2005).

*Estep* has greater significance. It arose from a petition by Ms. Estep in the Circuit Court for Prince George's County to modify a child custody order that had granted custody of the parties' four children to Mr. Estep. Three of the children lived in Virginia with their paternal grandparents, which the father claimed to be his home as well, although on workdays he stayed in Maryland, where he worked. By consent, but without any change in the custody order, the oldest child, who was 17, was living with his mother in Maryland.

The father moved to dismiss the action on the ground that the Maryland court had no jurisdiction under the Uniform Child Custody Jurisdiction Act and that Maryland also

21

was an inconvenient forum. He also filed a cross-petition seeking child support from the mother. The court dismissed the mother's petition with respect to the three younger children, whereupon she immediately sought an in banc review of that ruling. Notwithstanding that the father's cross-petition was still pending, as was the mother's petition regarding the oldest child, a three-judge court was convened, heard argument, and reversed the judge's dismissal of the petition. The father noted an appeal to the Court of Special Appeals, which dismissed the appeal on the ground that it was not allowed by law. On certiorari, this Court disagreed and reversed.

The Court, mostly in a footnote, first discussed the right of the adverse party in the in banc proceeding to take an appeal from the in banc decision. The right of appeal provided by § 22, the Court noted, was subject to such provisions as "may hereafter be made by Law." Prior to the creation of the Court of Special Appeals, the Court continued, the Court of Appeals was the sole tribunal before which any right of appeal from an in banc court could be exercised, but, by enacting §§ 12-307 and 12-308 of the Courts Article, the Legislature made clear its intent that, subject to any other provision permitting an appeal directly to the Court of Appeals, appeals from an in banc court must be taken to the Court of Special Appeals, with access to this Court only through a writ of *certiorari*. 285 Md. at 420, n.4.

That holding was later overruled in *Bienkowski*, 386 Md. 516 (2005), which itself, on that issue, was overturned by the 2006 amendment to § 22. Having concluded that both the Court of Special Appeals and, through the grant of *certiorari*, this Court had

jurisdiction to consider Mr. Estep's appeal, the Court looked to the scope of an allowable appeal. The right to appeal, it confirmed, was statutory, and the applicable statute was §12-301 of the Courts Article, which, subject to § 12-303, permits an appeal only from a final judgment; that requires that all claims against all parties be resolved. Critically, in footnote 8, at 423, the Court concluded that there was no conflict between that requirement and the requirement in § 22 that points and questions be reserved during the sitting of the trial court. In that regard, the Court concluded:

> "A reservation of points, being tantamount to registering an objection coupled with a declaration that the objector, at the appropriate time, intends to seek review of the trial court's ruling, simply saves the point or points in question for determination by the court in banc when a final, appealable judgment has been entered and does not act to bring the case to a halt until those issues are decided by a court in banc, unless, of course, an earlier appeal is allowed on some other recognized basis . . ."

*Id.* at 423.

The problem in *Estep* was that there remained undecided claims and therefore there was no appealable judgment. It was for that reason that the in banc court's ruling was "premature and must be reversed." *Id.* at 423.

That view was confirmed in *Dean v. State*, 302 Md. 493 (1985), a criminal case. Following Dean's conviction of rape, the trial judge granted his motion for new trial. The State immediately invoked § 22 and filed a reservation of points for in banc review, claiming that the judge abused his discretion in granting the motion. The in banc panel concluded that it had jurisdiction, reversed the judge's ruling, and remanded the case for sentencing. Dean appealed to the Court of Special Appeals, and this Court granted

23

*certiorari* prior to argument in the intermediate appellate court. The Court agreed with the Attorney General that there was no different standard of appealability to a court in banc and an appeal to the Court of Special Appeals and that both ordinarily require that there be a final judgment in the matter. In a criminal case, the Court noted, "no final judgment exists until after conviction and sentence has been determined or, in other words, when only execution of the judgment remains." *Id*. at 498, quoting from *Sigma Repro. Health Cen. v. State*, 297 Md. 660, 665 (1983). Accordingly, the Court held that the in banc court had no jurisdiction and its judgment was reversed.

*Montgomery County v. McNeece*, 311 Md. 194 (1987) resolved an issue that, as we shall explain, forms the ultimate basis for our judgment in this case. The case was a judicial review action in which the trial judge reversed the administrative decision not to increase the salary of a firefighter upon his promotion. Within 30 days after that judgment was entered, the county filed a notice for in banc review. The in banc court dismissed the appeal on the ground that the county had failed to reserve its points or questions in accordance with § 22 and the Court of Special Appeals dismissed the County's appeal to it. This Court, on *certiorari*, affirmed the Court of Special Appeals judgment. Confirming what it had held in *Medical Examiners v. Steward, supra*, 207 Md. 108, the Court repeated that "a court in banc has the right to decide that it is without jurisdiction in a particular case, and that a decision to that effect is final and unappealable." *McNeece, supra*. 311 Md. at 199.

24

The Court then noted that "[a]lthough we ordinarily do not express our views on any question raised by a dismissed appeal, we occasionally do so *to resolve* a matter of substantial importance [citations omitted]. The in banc court declared a portion of Md. Rule 2-551 unconstitutional, and we consider it in the public interest to address the correctness of that ruling." *Id.* at 200-01 (Emphasis added). The point at issue was the practice in place in 1867, and for years thereafter, that, to preserve a point for in banc review, an exception must be taken and noted at the time the ruling was made. That requirement was in the 1868 statute and was carried over in Md. Rule 510 until 1984, when, with the adoption of Rule 2-551, it was repealed.

The Court recounted that, with the advent of court stenographers and verbatim accounts of trial proceedings, the need for contemporaneous written exceptions ceased to exist, and by the adoption in 1945 of Rule 17, the "unnecessary and outmoded" formality of noting exceptions was abolished with respect to ordinary appeals. *Id.* at 204, quoting from *Elmer v. State*, 239 Md. 1, 6-9 (1965). The modernization of appellate procedures accomplished by Rule 17 had no effect on the procedure to be followed in appeals to in banc courts, however, and "[b]ecause of the requirement that an exception be noted of record on the day the point or question was decided, in banc appeals were essentially unavailable in those cases in which a judge filed an order with the clerk and notified the parties by mail." *McNeece*, 311 Md. at 204-05. Aware of the problem, the Court's Rules Committee proposed, and the Court approved, the deletion of the requirement of exceptions as part of new Rule 2-551. Although McNeece did not contest the need for

25

that change, he argued that the Court had no authority to make it and that, because the procedure for reserving points by exception was established by the Constitution, it could be changed only by Constitutional amendment.

Citing Art. IV, § 18 of the Constitution, the Court flatly rejected that argument and concluded that:

> "The changes made by the adoption of Rule 2-551 are within the constitutional authority granted by §§ 22 and 18 of Article IV. The substantive right of appeal to an in banc court is in no way changed. Only the practice and procedure relating to the preservation of points for appellate review, and the time for filing an election to have the review before an in banc court, have been changed, and these are matters within the rule-making authority of this Court. Reasonable regulation of the exercise of a constitutional right is permissible, provided the basic right is not impaired [citations omitted]. The procedures established by Rule 2-551 do not impair the right to an in banc appeal and the rule is constitutional."

*Id.* at 206-07.

In *Board v. Haberlin*, 320 Md. 399, 407 (1990), the Court confirmed its holdings in *Dean*, *Estep*, and *Handelman* that "when no appeal from a circuit court could be taken to the Court of Special Appeals (or, prior to the 1970's the Court of Appeals), then no appeal can be taken to a court in banc" and that, except in special cases where a statute provides otherwise, the applicable statute for determining when an appeal is permissible is § 12-301 of the Courts Article. In *Haberlin*, which involved a judicial review action from the decision of a liquor licensing board, there was a statute that precluded an appeal to the Court of Special Appeals unless there was a conflict in circuit court decisions on the point, and, accordingly, there was no appeal to the in banc court.

26

In *Dabrowski v. Dondalski*, 320 Md. 392 (1990), decided the same day as *Haberlin*, the Court, for the first time, noted the provision of Rule 2-551(b) requiring that the notice for in banc review must be filed within ten days after entry of judgment or, if a timely motion is filed pursuant to Rules 2-532, 2-533, or 2-534, within ten days after an order disposing of the motion, and held that that provision meant what it said and was controlling. The plaintiff's request for in banc review was not filed within that time, and the Court held that it was error for the in banc court to have exercised jurisdiction over the appeal.

In *Bienkowski v. Brooks, supra*, 386 Md. 516, 523, the Court concluded that, as § 22 expressly permitted an appeal from an in banc court only to the Court of Appeals, no appeal could lie to the Court of Special Appeals, and that the Court of Appeals was wrong in tacitly or directly concluding otherwise in *Estep, Dean, and McNeece*. The dispositive holding was that "the Court of Special Appeals is not authorized to exercise jurisdiction over the merits of such appeals." *Id.* at 523-24. Without citing any specific statutory authority for the proposition, the Court concluded that "[u]nder the only reasonable interpretation of Article IV, § 22, in light of the present statutory provisions governing the Court of Appeals' jurisdiction, an appellee in the court in banc, after an appealable judgment by the court in banc, is entitled to file in the Court of Appeals a petition for a writ of certiorari pursuant to the current statutory provisions and rules governing certiorari petitions and certiorari practice in the Court of Appeals." *Id.* 1t 549.

**Legislative and Judicial Response**

27

As we have observed, that determination in *Bienkowski* was swiftly overturned by means of an amendment to § 22 proposed by the Legislature in its next session (2006 Maryland Laws, Ch. 421) and approved by the voters in November of that year. Although the principal purpose of the amendment was to provide a direct appeal from an in banc court to the Court of Special Appeals, it did two other things as well. First, and most important with respect to the case before us, it repealed the authority of the circuit courts to determine by local Rules the procedure for appeals to an in banc court and vested that authority expressly and exclusively in this Court. By virtue of that change, § 22 now provides that "the procedure for appeals to the circuit court in banc shall be provided by the Maryland Rules." Second, at the urging of Melvin J. Sykes, Esq., testifying as a member of the Rules Committee, a number of obsolete provisions in § 22 were removed, including the prospect that an in banc court could consist of more than three judges.

In moving the authority to determine the procedure for exercising the right of appeal to an in banc court from the circuit courts to this Court, the Legislature (and the electorate) were merely recognizing what already existed as a practical matter. As noted, under the last clause in § 22 providing that the section "shall be subject to such provisions as may hereafter be made by Law," the General Assembly had enacted procedural requirements by statute, the latest version of which was codified in Article 75, §§ 131-133 of the 1951 Code. Also as noted, by Constitutional Amendment adopted in 1944 (amending Art. IV. § 18) and by an accompanying statute, now codified in Code, Courts

Article, § 1-201, this Court was given the authority to "adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law . . ." The statute, §1-201(a), specifies that that power "shall be liberally construed." Because our Rules "have the force of law," they also fall within the purview of the last clause in § 22 that the section "shall be subject to such provisions as may hereafter be made by Law."

In the early 1950's, the Court's Rules Committee began work on the first comprehensive set of Rules of practice and procedure for the trial courts. One of the Rules that was drafted and debated was Rule 510, dealing with in banc appeals. There was much discussion as to whether such a Rule was necessary, but, in the end, the Committee decided to include it "because it is in pursuance of a constitutional provision . . . but is rarely used today." *See* Committee Note to former Rule 510. The Rule was presented to the Court in the Committee's Twelfth Report, approved by the Court in July 1956, and took effect January 1, 1957. The statutory provisions in Art. 75 were then repealed, so that the only procedures governing in banc appeals were those in the Rule, which, at the time, was closely patterned on the former statute.

Neither the statute nor the initial Rule specified any time for when such review would occur; nor was it clear whether the in banc review panel was to consist of all of the judges in the circuit or only three. That problem did not exist in 1867, when there were only three judges in a circuit.

The Rules Committee addressed those and other issues arising from Rule 510 on several occasions, eventually recommending that the procedures governing appeals to the Court of Special Appeals apply as well to seeking review by an in banc court. That approach was proposed to the Court as new Rule 2-551 in the Committee's 82nd Report, which generally revised and reorganized all of the Rules now found in Titles 1 through 4 of the Maryland Rules.

The Court rejected that proposal as drafted by the Committee but approved its essence. Rule 2-551(a), as adopted, provided that, when in banc review is permitted by § 22, a party may have a judgment or determination of any point or question reviewed by a court in banc by filing a notice for in banc review within the time prescribed by then-Rule 1012 for filing an appeal; *i.e.,* within 30 days *after* entry of the judgment. The requirement of written exceptions was eliminated; instead, the Rule provided that issues were reserved for in banc review by making an objection in the manner provided in Rules 2-517 and 2-520. Upon the filing of the notice, the circuit administrative judge was to designate three judges, other than the judge who tried the action, to sit in banc. Section (e) permitted the court to shorten or extend time limits imposed by the Rule *except the time for filing a notice for in banc review.* That Rule took effect July 1, 1984.

A year later, the Rule was amended to require that the notice for in banc review be filed within ten days after the entry of judgment or, if a motion under Rule 2-533, 2-534, or 2-535 was filed, within ten days after disposition of that motion. As in the previous Rule, that time may not be shortened or extended. *See* § (f). The Rule has been amended

twice more, in 2002 and 2017, but those amendments do not affect the issues in this case, except to the extent that, in adopting those amendments, the Court also re-adopted the non-amended language that already was there.

### Arguments

As we indicated above, the first composite issue before us is whether the State had the right to seek in banc review of Judge Silkworth's ruling on the motion *in limine*, which clearly is an interlocutory ruling that could not have been appealed by the State directly to the Court of Special Appeals, first, because it did not constitute a final judgment within the meaning of Code, Courts Article, § 12-301, and second, because it was not the kind of order from which an appeal by the State is permissible under Courts Article, § 12-302(c). Phillips argues that the State has no right of in banc review for both of those reasons, citing the plain language of those two sections of the Code and insisting that review by an in banc court under § 22 constitutes an appeal to an appellate tribunal.

Recognizing that there are decisions of this Court supporting that view, among them *Estep*, *Dean, Handleman*, and *Haberlin*, the State contends that those cases were wrongly decided by failing to recognize that review by an in banc court is not an "appeal" and therefore is not subject to the "final judgment" rule applicable to appeals to the Court of Special Appeals and this Court or to the limitation in Courts Article, § 12-302(c) regarding what kinds of rulings the State can appeal from in a criminal case. Faced with the fact that § 22 itself uses the term "Appeal," the State argues that "Appeal," as it appears in § 22, has a capital "A" and therefore is not the same as a true appeal.

31

The State relies on a comment made by Delegate Syester at the 1867 Convention as indicative of an intent, at least at that time, to permit in banc review in situations where no appeal was allowed. The comment of one Delegate out of the 117 who were members of the Convention, however, is of little value, especially as Syester was speaking of appeals by the *defendant* in a criminal case, not the State.[9]

The State's argument regarding Phillips' appeal to the Court of Special Appeals is somewhat the converse of its position regarding its right to in banc review. Although disclaiming the application of the "final judgment" rule with respect to its right to in banc review, the State seeks to apply it to preclude Phillips' right to appeal to the Court of Special Appeals. The State's point is that the in banc court's ruling on the motion *in limine* was an interlocutory one that is not appealable. That argument was rejected in *Dabrowski v. Dondalski, supra*, 320 Md. at 395 and *Estep*, 285 Md. at 421, n.5, holding that the decisions of an in banc court, which is an appellate court, "are reviewable as final appellate judgments."

### Conclusions

The text of § 22, as applicable in this case, establishes that:

---

[9] As we noted above, Syester pointed out that "appeals" were not then allowed in criminal cases and that "a criminal defendant's life should not rest solely on the decision of one judge." Apart from the fact that the source for that comment was a newspaper article, the fact is that, at the time, there was no right of "appeal" in criminal cases, although there was access to the Court of Appeals through a Writ of Error, which was mentioned in the 1867 version of § 22 but deleted in the 2006 rewriting of that section.

(1) to be entitled to in banc review of any point or question decided by a trial judge, that point or question must be reserved and the motion for such reservation must be entered of record "during the sitting at which the decision may be made," which, under the so-far-unreversed holding in *Costigin v. Bond, supra*, means before the end of the day;

(2) the procedure for appeals to the Circuit Court in banc "shall be as provided by the Maryland Rules;" and

(3) the decision of the in banc court shall be the effective decision as against the party at whose motion the points or question was reserved but shall not preclude "the right of Appeal" by an adverse party who did not seek in banc review "in those cases, civil or criminal, *in which appeal to the Court of Special Appeals may be allowed by Law*." (Emphasis added).

Rule 2-551, as applicable in this case, establishes seven other things:

(1) When in banc review is permitted, a party may have a judgment or determination of any point or question reviewed in banc by filing a notice for in banc review;

(2) Issues are reserved for in banc review by making an objection in the manner set forth in Rules 2-517 (an objection to evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent) and 2-520 (a party may not claim error in the giving or failure to give a jury instruction unless the

33

party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection);

(3) The notice for in banc review must be filed within ten days *after entry of judgment* or, if a motion under Rule 2-533, 2-534, or 2-535 is made, within ten days *after* disposition of that motion (emphasis added);

(4) Upon motion, the court may shorten or extend the time requirements of the Rule *except the time for filing a notice for in banc review* (emphasis added);

(5) *Upon the filing of the notice*, the Circuit Administrative Judge shall designate three judges of the circuit, other than the judge *who tried the action* to sit in banc (emphasis added);

(6) The in banc panel shall dismiss an in banc review if, among other things, "*the notice for in banc review was prematurely filed or not timely filed*" (emphasis added); and

(7) The decision of the panel does not preclude an appeal to the Court of Special Appeals by an opposing party "*who is otherwise entitled to appeal*" (emphasis added).

These provisions of the Rule were largely ignored in this case. Judge Silkworth's ruling was made and docketed on February 12, 2016. The State filed a request for in banc review on February 18, 2016, but did not identify any points or questions for review or state reasons why Judge Silkworth was wrong in his ruling until March 17, 2016, when it filed its memorandum. Even if we were to give a more liberal interpretation to the

34

meaning of "sitting" than was given in *Costigin* because the ruling was not made in open court where a same-day objection is more feasible, and look instead to whether the State properly objected to the ruling as required by Rules 2-517 or 2-520, a month would not qualify as a timely objection and thus not a timely reservation.  That is one reason for concluding that the in banc panel had no jurisdiction in the matter.  *Costigin, v. Bond; Montgomery County v. McNeece*, both *supra*.   There are two others.

Rule 2-551 makes unmistakably clear that an in banc court is not to be designated unless the notice for in banc review was filed within ten days after judgment in the case was entered, and that hasn't happened yet.  That requirement resolves the issue of whether in banc review is available to consider an interlocutory ruling.  Subject to any law that, in a particular circumstance, would provide otherwise, in any case in which a party has a right to appeal from a final judgment to the Court of Special Appeals or the Court of Appeals, the party has the right to request in banc review of an interlocutory ruling properly reserved, *but not until final judgment is entered*.  *Dabrowski v. Dondalski*, *supra*.

That, perhaps more than anything else, establishes the true comparability and compatibility of in banc review with an appeal to the Court of Special Appeals and this Court.  The appeal in both situations is from the judgment, which brings before the appellate court all issues that were properly preserved for appellate review, including those determined by interlocutory orders.  *B & K Rentals v. Universal Leaf,* 319 Md. 127, 132-33 (1990); *Montgomery County v. Stevens,* 337 Md. 471, 476-77 (1995).  The

35

issue is not *whether* an interlocutory ruling can be appealed to an in banc court, but *when* it can be appealed.

The State's response to these undeniable facts seems to be that Rule 2-551 itself is unconstitutional because it conflicts with the wording of § 22. We find no conflict in these regards. Apart from the fact that § 22 (along with Art. IV, §18 of the Constitution, which need to be read in harmony) specifically directs that *procedures* regarding in banc review are to be determined by Rules of this Court, we made clear in *McNeece, supra* that Rule 2-551 was not in conflict with § 22 and was constitutional. We now confirm that ruling.

Finally, the State has failed to overcome the inconvenient fact that, substantively, it had no authority to appeal the evidentiary ruling by Judge Silkworth. Its right of appeal in a criminal case is limited to those matters specified in Courts Article, § 12-302(c), and the *in limine* order in this case is not among them. We confirm the holdings in *Dean*, *Estep*, *Handleman*, and *Haberlin* that "when no appeal from a circuit court could be taken to the Court of Special Appeals or . . . the Court of Appeals, then no appeal can be taken to a court in banc."

In summary, the current version of § 22, read in conjunction with Rule 2-551, is consistent with the relevant case law and with what appears to be an expressed intent of the section. It provides a comparable and compatible alternative to an appeal to the Court of Special Appeals without unduly interrupting the ordinary course of trials, such as occurred here.

For the reasons stated in this Opinion, we shall affirm the judgment of the Court of Special Appeals.

**JUDGMENT AFFIRMED; PETITIONER TO PAY THE COSTS.**