*Norino Properties, LLC, et al. v. Joseph J. Balsamo*, No. 1343, September Term, 2020, Opinion by Graeff, J.

**MARYLAND CONSTITUTIONAL LAW — IN BANC REVIEW — SCOPE OF REVIEW**

Pursuant to Article IV, § 22 of the Maryland Constitution, in banc review by a circuit court panel is permitted "[w]here any trial is conducted by less than three Circuit Judges." The plain language of Article IV, § 22 provides that in banc review is available only after a trial.

A "trial" for purposes of Article IV, § 22 is "'that step in an action by which issues or questions of fact are decided.'" *Berg v. Berg*, 228 Md. App. 266, 281 (2016) (quoting *Miller v. Tobin*, 18 F. 609, 616 (C.C.D. Or. 1883), *overruled on other grounds by Alley v. Nott*, 111 U.S. 472 (1884)). The term "trial" in the context of in banc review should be read broadly to include an action that determines issues (of law or fact) or questions of fact, as long as the action results in a final judgment. The ruling of the circuit court granting a motion to dismiss with prejudice, thereby resolving the action between the parties, was a "trial" pursuant to Article IV, § 22.

Accordingly, the in banc panel had jurisdiction to review the decision of the circuit court dismissing Mr. Balsamo's complaint. The in banc panel properly found that the circuit court abused its discretion in denying Mr. Balsamo leave to amend the complaint.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1343

September Term, 2020

_____

NORINO PROPERTIES, LLC, ET AL.

v.

JOSEPH J. BALSAMO

_____

Graeff,
Reed,
Ripken,

JJ.

_____

Opinion by Graeff, J.

_____

Filed:  December 15, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal involves an ongoing business dispute between appellants, John Zorzit and Norino Properties, LLC ("Norino Properties"),[1] and appellee, Joseph Balsamo. Mr. Zorzit and Mr. Balsamo are co-owners of Balsamo and Norino Properties, LLC ("BNP"), a real estate investment company created in 1998. In 2012, Mr. Balsamo filed suit in the Circuit Court for Baltimore County seeking, among other things, to dissolve BNP. The court did not dissolve BNP, but it granted some relief to Mr. Balsamo. Mr. Balsamo appealed, and we affirmed the circuit court's judgment. *See Balsamo v. Zorzit*, No. 761, Sept. Term, 2017 (filed July 9, 2018), *cert. denied*, 461 Md. 487 (2018) ("*Balsamo I*").

In 2019, Mr. Balsamo, individually and derivatively on behalf of BNP, filed in the Circuit Court for Baltimore County a Complaint, and a First Amended Complaint, against appellants seeking, among other things, a judicial dissolution of BNP. Appellants filed a Joint Motion to Dismiss, arguing that the claims were barred by the doctrine of *res judicata*, and the Amended Complaint failed to state a claim upon which relief could be granted. The court granted the motion to dismiss. It subsequently denied Mr. Balsamo's Motion to Alter or Amend Judgment and his accompanying request for leave to amend the complaint.

Mr. Balsamo requested in banc review, and the circuit administrative judge designated three judges to review the court's decision as a panel in banc. The in banc panel reversed the court's denial of the request for leave to amend and granted Mr. Balsamo 30 days to file another complaint.

---

[1] Mr. Zorzit is the majority owner of Norino Properties, LLC.

On appeal, appellants present the following questions for this Court's review, which we have rephrased slightly, as follows:

1.    Did the in banc panel lack jurisdiction to consider the appeal pursuant to Article IV, § 22 of the Maryland Constitution because the circuit court's dismissal of the Amended Complaint for failure to state a claim was not a "trial"?

2.    Did the in banc panel err in concluding that it was an abuse of discretion for the circuit court to refuse to grant Mr. Balsamo leave to amend his complaint?

For the reasons set forth below, we shall affirm the judgment of the in banc panel.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### I.

### Events Prior to the Litigation Subject to Appeal

BNP, a limited liability company, was formed on November 18, 1998. Mr. Balsamo and Mr. Zorzit each have a 50% membership interest in BNP. Although they did not have a "comprehensive written operating agreement" for BNP, they established BNP "for the purpose of buying, selling, leasing, improving and otherwise investing in real estate to create and preserve assets to fund each member's retirement." Mr. Zorzit is BNP's managing member.

Norino Properties is a limited liability company that was formed on September 15, 1997. Mr. Zorzit is the majority owner and "manager or managing member" of Norino

---

[2] Because the present case was resolved on a motion to dismiss, the facts are taken from the Amended Complaint and undisputed documents attached to the Complaint. *See Sprenger v. Pub. Serv. Comm'n of Md.*, 400 Md. 1, 21 (2007).

2

Properties. James Parks, a certified public accountant, is Norino Properties' minority member. Mr. Balsamo does not have a membership interest in Norino Properties.

On November 18, 1998, Norino Properties and BNP entered into an Agreement for Management Services ("Management Agreement"), which provided that Norino Properties would "provide construction, maintenance and supporting services to BNP in exchange for largely unspecified compensation paid by BNP to Norino Properties." The Management Agreement "does not include any specific rates for compensation and is of indefinite duration." On November 1, 2010, Mr. Balsamo and Mr. Zorzit affirmed the Management Agreement through an Affirmation.[3]

In 2012, Mr. Balsamo, individually and derivatively on behalf of BNP, filed suit against appellants, asserting multiple claims, including negligence and breach of fiduciary duties, breach of contract, unjust enrichment, and indemnification. Mr. Balsamo alleged that Mr. Zorzit wasted his and BNP's assets, stating that Mr. Zorzit "caused BNP to loan him or companies he controlled over $900,000 to purchase property in Canada," which Mr. Zorzit subsequently mismanaged, "without a promissory note in place to evidence the loan or any writing memorializing his obligations to BNP." Mr. Balsamo alleged that Mr. Zorzit harmed BNP "by using its funds to satisfy a tax lien imposed upon Nick's Amusement, another company of which Mr. Zorzit is the sole owner."

---

[3] Copies of the Management Agreement and the Affirmation are attached to the Amended Complaint, collectively, as Exhibit 2, and incorporated into the complaint by reference.

Mr. Balsamo also alleged that, although BNP owned commercial real property in Baltimore County (the "Baltimore County Property"), Mr. Zorzit "wrongfully held that property in the name of Norino Properties." Chick-fil-A leased the Baltimore County Property, which was valued at $3.5 million. Mr. Balsamo further alleged that Mr. Zorzit assisted Mr. Parks in, among other things, falsely claiming a membership interest in BNP. Mr. Balsamo sought damages, a judicial dissolution and winding up of BNP, and a declaratory judgment "that the Baltimore County Property was owned by and for the benefit of BNP; that Mr. Parks had no interest in BNP; and that BNP's agreements with Mr. Zorzit's companies," including the Management Agreement with Norino Properties, "were not binding or enforceable upon BNP."

In June 2014, a fifteen-day bench trial ensued. On March 4, 2015, the court issued an Order, with Findings of Fact and Conclusions of Law.[4] The court did not dissolve BNP, noting that the parties had agreed in the beginning that Mr. Zorzit was the sole authorized representative to conduct business for BNP. Although there had been disputes between the parties in recent years, the court found that it was "reasonably practicable to carry on the business in conformity with the articles of organization."[5] The court did, however, grant

---

[4] A copy of the court's Findings of Fact and Conclusions of Law from *Balsamo I* is attached to the Amended Complaint as Exhibit 3, and incorporated into the Complaint by reference.

[5] Md. Code Ann., Corps. & Ass'ns Article § 4A-903 (2014 Repl. Vol.), provides that, on application of a member, a circuit court "may decree the dissolution of the limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or the operating agreement."

4

some relief to Mr. Balsamo, including ordering an independent accounting of BNP member capital accounts.

## II.

## Amended Complaint at Issue in the Present Case

In August 2019, Mr. Balsamo filed a new Complaint, and in September 2019, he filed an Amended Complaint, against Norino Properties and Mr. Zorzit. In Count One, Mr. Balsamo, in his individual capacity, requested dissolution of BNP because it was "not reasonably practicable to carry on the business in conformity with the articles of organization or the operating agreement." In Counts Two and Three, he alleged breach of contract and constructive fraud. In Counts Four through Seven, Mr. Balsamo alleged, "for the use and benefit of BNP," negligence and breach of fiduciary duties, unjust enrichment, constructive fraud, and corporate waste. In Count Eight, for the use and benefit of BNP, he sought a declaratory judgment that the Management Agreement was terminable at any time.

The Amended Complaint alleged that, since October, 2017, Mr. Zorzit had operated BNP "for the primary benefit of himself" and "his other companies," including Norino Properties. It alleged that Mr. Zorzit had "breached his fiduciary duties and other obligations, and since October 1, 2017, had engaged in, and caused BNP to engage in, a course of fraudulent, deceptive, oppressive, illegal and inequitable conduct," including: (1) illegitimate loans; (2) obfuscation of business records; (3) self-dealing; and (4) fraudulent or otherwise unlawful acts.

5

Regarding illegitimate loans, Mr. Balsamo alleged that Mr. Zorzit "frequently caused BNP to make loans unrelated to BNP's business purpose," without Mr. Balsamo's consent, and thereby treated BNP as his personal lender. Four loans, in particular, had "provided BNP no legitimate business advantage and apparently were instead intended to benefit Mr. Zorzit and his other businesses."

First, the Amended Complaint alleged that BNP, through Mr. Zorzit, made an "undocumented, unsecured, interest-free loan" to an administrative law judge ("ALJ") for "tens of thousands of dollars" to "curry favor" with the ALJ. The loan served no business purposes of BNP, and ultimately, it caused a loss to BNP because the ALJ did not repay the loan after it was discharged in bankruptcy.

Second, BNP, through Mr. Zorzit, made a loan of $61,567.77 to an unspecified borrower, who secured the loan with a mortgage on real property located in Catonsville, Maryland. The loan documents and mortgage were in BNP's name. After the borrower refinanced the secured loan and repaid the principal amount, plus interest, in the total amount of $77,309.29, "Mr. Zorzit contended that the loan repayment actually belonged to Norino Properties, and he transferred the repayment funds, including accrued interest, from BNP to Norino Properties."

Third, BNP, through Mr. Zorzit, made a loan to Amer. Inc. ("Amer"), which "operates a bar on real estate owned by one of Mr. Zorzit's other companies." After Mr. Zorzit disbursed the loan funds from BNP, Amer "used the funds to pay Mr. Zorzit's other businesses." Amer has not repaid the loan from BNP, and "Mr. Zorzit has not collected any late fees on BNP's behalf."

6

Fourth, BNP, through Mr. Zorzit, made a "substantial loan" to a Canadian corporation that Mr. Zorzit owned pursuant to a Non-Negotiable Promissory Note that provided "for no interest or periodic payments but only a single balloon payment upon maturity in 2024." Mr. Zorzit's corporation used the loan proceeds to purchase real property in Ontario, Canada in its name, but BNP paid the property taxes. Consequently, rather than BNP's "loan balance being paid down over time, it currently continues to *increase* as Mr. Zorzit causes BNP to make additional disbursements for taxes and other expenses."

Regarding obfuscation of business records, the Amended Complaint alleged that, since October 1, 2017, Mr. Zorzit had precluded Mr. Balsamo "from having any meaningful access to the books, records, and finances of BNP." Despite Mr. Balsamo's "repeated demands" after October 2017, Mr. Zorzit refused Mr. Balsamo access to BNP's bank records. In July 2019, Mr. Balsamo requested that Mr. Zorzit produce documents in electronic format related to BNP's properties. Mr. Zorzit responded that Mr. Balsamo could continue to obtain hardcopies of the documents from him.

Mr. Zorzit also refused Mr. Balsamo access to documents concerning Chick-fil-A's lease of the Baltimore County Property. In accordance with the ground lease between Chick-fil-A and BNP, Chick-fil-A sublet parts of the Baltimore County Property to third-parties. Mr. Balsamo had "requested to review the documents related to those subleases, but Mr. Zorzit has refused." The Amended Complaint alleged that Norino Properties was receiving the rent paid by Chick-fil-A, despite the ruling in *Balsamo I* that BNP was the

7

owner. Because Mr. Balsamo did not have access to the subleases, he could not determine whether the monies owed to BNP were being paid.

Mr. Zorzit also refused Mr. Balsamo access to documents regarding BNP's legal expenses and attorneys' fees. BNP, through Mr. Zorzit, paid over $2.1 million in expenses and fees in connection with *Balsamo I* that BNP should not have paid because Mr. Balsamo, not Mr. Zorzit, was granted indemnification in *Balsamo I*.

Regarding self-dealing, the Amended Complaint alleged that "Mr. Zorzit frequently operates BNP for the sole benefit of his other companies," including Norino Properties. Since 2017, Mr. Parks had performed accounting services for Mr. Zorzit and his companies, but only BNP paid Mr. Parks' compensation. Additionally, BNP, through Mr. Zorzit, contracted with Mr. Zorzit's companies whenever possible. Mr. Zorzit's Maryland-based companies provided construction and maintenance services to BNP's non-Maryland properties, even though "it likely would be cheaper and more efficient to employ local companies for such work." For example, BNP, through Mr. Zorzit, used one of Mr. Zorzit's companies, Norino Construction, for construction services at one of BNP's properties in North Port, Florida, "even though Norino Construction is based in Maryland, not Florida."

The Amended Complaint alleged that BNP, through Mr. Zorzit, also obtained property management services from Mr. Zorzit's other business "at above market rates." Although BNP paid Mr. Zorzit, his companies, and Mr. Parks, collectively, $364,000 per year for management and bookkeeping services, Mr. Balsamo received a solicited bid from WPM Management Co. ("WPM"), a professional property management company, to

8

provide the same management and bookkeeping services for $95,000 per year. WPM also would provide monthly documentation related to BNP's properties.

Mr. Zorzit also failed to inform Chick-fil-A that, in accordance with the circuit court's judgment in *Balsamo I*, the lease for the Baltimore County Property was assigned from Norino Properties to BNP. Chick-fil-A was unaware of the assignment until Mr. Balsamo contacted the restaurant in July 2019. As of September 30, 2019, Chick-fil-A had tendered all rent payments due under the ground lease to Norino Properties. Mr. Zorzit had not instructed Chick-fil-A to make future rent payments to BNP. Such omissions placed BNP at "unnecessary risk" and "personally enriched" Mr. Zorzit.

Regarding fraudulent or otherwise unlawful acts, Mr. Zorzit opened bank accounts in the name of BNP with Wells Fargo, SunTrust, M&T Bank, and Bank of America "by fraudulently holding himself out as the sole owner of BNP." He did so to freeze Mr. Balsamo out of BNP and to preclude Mr. Balsamo from accessing BNP's business records.

Mr. Balsamo "made demand of Mr. Zorzit on most, if not all, of the offending conduct but nothing has happened as a result." Thus, Mr. Balsamo alleged that further demand was futile. Mr. Balsamo sought, among other things, damages and dissolution of BNP.

### III.

### Joint Motion to Dismiss and Opposition

On October 11, 2019, appellants filed a Joint Motion to Dismiss the Amended Complaint with prejudice. They argued, among other things, that Mr. Balsamo's claims

9

against Mr. Zorzit were barred by *res judicata*, and all counts of the Amended Complaint failed to state claims for relief.

With respect to *res judicata*, appellants argued that the Amended Complaint involved the same claims that were at issue in *Balsamo I*, the same parties were involved, and the claims were the subject of a final judgment rendered on the merits. Accordingly, appellants argued that Mr. Balsamo was barred from relitigating his claims.

Regarding the legal sufficiency of the Amended Complaint, appellants argued that, in Count One, Mr. Balsamo failed to state a claim for a judicial dissolution of BNP, asserting that BNP continued to operate in accordance with its Articles of Organization, and therefore, the statutory remedy of judicial dissolution was unavailable to Mr. Balsamo as a matter of law. With respect to Count Two, appellants argued that Mr. Balsamo failed to state a claim for breach of contract because, under the November 1998 agreement, Mr. Zorzit had broad authority to act as BNP's managing member, and Mr. Balsamo was unable to identify any provision of the agreement or the Articles of Organization that Mr. Zorzit allegedly breached. They argued that Counts Three and Six failed to state claims for constructive fraud because the allegations contained in those counts lacked the requisite degree of factual particularity. Appellants further argued that Mr. Balsamo was barred as a matter of law from pursuing relief for unjust enrichment, as alleged in Count Five, because such a claim was inapplicable where there was a contract, and Mr. Balsamo failed to allege how, and to what extent, Mr. Zorzit was unjustly enriched.

With respect to Count Seven, which alleged corporate waste by Mr. Zorzit based on BNP's advancement of attorneys' fees to defend the litigation against him, appellants

10

argued that the count failed to state a claim because, by maintaining the present action, Mr. Balsamo was the source of the alleged waste at issue. Finally, appellants argued that Mr. Balsamo was not entitled to the declaratory relief sought in Count Eight because a justiciable controversy between BNP and Norino Properties did not exist. Accordingly, appellants asserted that the court should dismiss the Amended Complaint with prejudice.

On November 5, 2019, Mr. Balsamo filed an Opposition, arguing that the claims were not barred by *res judicata*. He asserted that the Amended Complaint was "based on new groups of facts" that occurred after October 2017, and this case did not "sufficiently overlap" with the operative facts of *Balsamo I*.

Mr. Balsamo also argued that the Amended Complaint sufficiently alleged claims for relief. With respect to Count One, he argued that it sufficiently alleged a judicial-dissolution claim because it was not reasonably practicable for BNP to operate as intended as a result of Mr. Zorzit's "pervasive fraudulent and oppressive conduct." He argued that Count Two sufficiently alleged a breach-of-contract claim because, "through his diversion of assets, self-dealing, obfuscation of records, fraudulent identity of himself as the sole owner, and myriad other examples of oppressive and illegal conduct that acts to the detriment of BNP, Mr. Zorzit breached his obligations as stated under the Articles of Organization."

Mr. Balsamo also argued that he sufficiently alleged claims for constructive fraud in Counts Three and Six. Initially, he argued that the heightened pleading standard for fraud claims under federal law "exceed[s] that which is required under the Maryland

11

Rules." In any event, he asserted that he sufficiently alleged claims for constructive fraud because the Amended Complaint was "replete with allegations of concealment and deceit."

With respect to the claim for unjust enrichment in Count Five, Mr. Balsamo asserted that this claim was legally sufficient because he had "alleged that Mr. Zorzit, outside the scope of authority granted to him as an employee of Norino Properties and under the Management Agreement, has repeatedly conferred benefits upon himself to the detriment of BNP." With respect to his claim for corporate waste, Mr. Balsamo argued that there was no document providing Mr. Zorzit with authority to advance the payment of legal fees and costs, through BNP, to finance appellants' defense in the present case. Finally, Mr. Balsamo argued that he sufficiently alleged a declaratory judgment claim, asserting that one of the primary issues in the case, whether the Management Agreement was terminable for lack of a durational limit, was "precisely the type of question to be answered by a declaratory judgment claim."

## IV.

## Motion Hearing

On January 9, 2020, the circuit court held a hearing on the Joint Motion to Dismiss.[6] At the hearing, appellants reiterated their argument that the Amended Complaint "should be dismissed because all of the claims were or could have been" litigated in *Balsamo I*, and

---

[6] The circuit court also intended to hear argument on Mr. Balsamo's motion for a preliminary injunction. After argument on the Joint Motion to Dismiss, however, the parties entered into a consent order that obviated the need to argue the injunction motion. Under the consent order, appellants agreed that they would provide Mr. Balsamo with ten days' written notice of an intention to sell any of BNP's properties. The court continued the hearing on the injunction motion to a future date.

12

therefore, they were barred by *res judicata*. They disputed that the claims in the Amended Complaint were based on conduct that occurred after October 2017.

Mr. Balsamo initially argued that a claim that suit is barred by *res judicata* "is really not a motion to dismiss, it is a motion for summary judgment." In any event, he conceded that two of the three elements of *res judicata* were satisfied, i.e., the parties were the same and there had been a final judgment rendered on the merits in *Balsamo I*. Mr. Balsamo argued, however, that the claims were not the same because the alleged conduct that formed the basis of the claims in the Amended Complaint occurred from 2017 to 2019, after the judgment in *Balsamo I*.[7]

Mr. Balsamo further argued that the Amended Complaint stated legally sufficient claims for relief, reiterating arguments he made in the Opposition to the Joint Motion to Dismiss. Regarding the legal sufficiency of the constructive fraud claims, the following colloquy occurred between the court and Mr. Balsamo's counsel:

> [COUNSEL FOR MR. BALSAMO]: [W]e have obtained documents from the bank, Your Honor, that we think demonstrate -- so we haven't had a chance -- here is this in a nutshell, Your Honor. I could have filed another amended complaint on December 21st but I didn't think I needed to do so because I think that this complaint suffices.

---

[7] *Res judicata* bars "the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not—raised in the first suit." *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 106 (2005) (quoting *Lizzi v. Washington Metro. Area Transit Auth.*, 384 Md. 199, 206 (2004)). The elements of *res judicata* are: (1) that the same parties, or those in privity, are involved in each suit; (2) the claims are identical; and (3) there was a final judgment in the first action. *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 392 (2000).

13

We have gotten documents that if we get to the preliminary injunction hearing, would be some of the first things we cross Mr. Zorzit on that I think show fraud. I'm not going to give away the house right now.

THE COURT: You didn't sue for fraud.

[COUNSEL FOR MR. BALSAMO]: I agree, Your Honor. The point I'm making, Your Honor, is that I don't think I need to -- I think that we can dismiss the constructive fraud and I can now plead an actual fraud claim based on the documents I received.

THE COURT: So you want to dismiss Counts 3 and 6?

[COUNSEL FOR MR. BALSAMO]: I don't want to dismiss anything. What I'm suggesting, if you have a concern about dismissing anything –

THE COURT: I don't want to stand in your way?

[COUNSEL FOR MR. BALSAMO]: Give me the opportunity to plead the fraud that I have now found in the documents that we received. That is what I'm asking for.

THE COURT: Well, are you conceding that you haven't alleged sufficient facts for constructive fraud?

[COUNSEL FOR MR. BALSAMO]: I'm not.

THE COURT: Okay. I guess we will be seeing another amended complaint.

[COUNSEL FOR MR. BALSAMO]: Happy to do whatever the Court would like.

THE COURT: No. I'm not telling you to do that, believe me.

[COUNSEL FOR MR. BALSAMO]: Fair enough, Your Honor. The point, Your Honor, I guess, is this: If you are not going to see another amended complaint, you might see a whole new complaint.

THE COURT: All right. Okay. Go ahead.

In rebuttal, counsel for appellants addressed the failure to state a claim for

constructive fraud. Counsel stated that he could not stop Mr. Balsamo from filing a new

14

complaint based on new facts, but he reiterated his position that the Amended Complaint "fails to state claims upon which relief can be granted and ought to be dismissed," and he stated that "there shouldn't be an ability to amend this complaint because they already had two chances."

## V.

## Memorandum Opinion and Order

On January 29, 2020, the circuit court filed a Memorandum Opinion and Order granting the Joint Motion to Dismiss the Amended Complaint with prejudice. The court dismissed Count One (judicial dissolution) as barred by *res judicata*, noting that the claim for dissolution of BNP in the present case was identical to the dissolution claim in *Balsamo I*. The court stated that the claim in both suits was that it was not reasonably practicable to operate under the current conditions, and although the Amended Complaint alleged acts of bad faith by Mr. Zorzit, it failed to allege, other than a conclusory allegation, that BNP was operating in a different manner than it was in *Balsamo I*.

The court next discussed the general categories of misconduct alleged in Counts Two (breach of contract), Four (breach of fiduciary duties), Five (unjust enrichment), and Seven (corporate waste). It dismissed those counts based on *res judicata* or for failure to state a claim upon which relief could be granted.

With respect to the allegations relating to obfuscation of business records, the court found that they did not support any of the counts because they failed to state a claim for relief. Based on the findings of fact made in *Balsamo I*, Mr. Balsamo was a passive member of BNP, and as such, his right to inspect BNP's records was defined in Md. Code

15

Ann., Corps. and Ass'ns Article § 4A-406(e) (2014 Repl. Vol.), but the Amended Complaint did not allege that Mr. Balsamo made a demand pursuant to the statute or that any such demands were denied. The court also concluded that the allegations pertaining to self-dealing were barred by *res judicata* because the claims had already been litigated, or could have been litigated, in *Balsamo I*.

With respect to the claims of fraud, the court found that the claims did not allege false statements or plead the claims with particularity. Accordingly, it concluded that the fraud claims in Counts Two, Four, Five, and Seven, as well as Counts Three and Six, should be dismissed for failure to state a claim upon which relief could be granted.

Finally, the court dismissed Count Eight, seeking declaratory judgment. Although the court recognized that Mr. Balsamo "understandably wants to extricate himself from the Management Agreement," he previously had sought this relief, and this was "nothing but a second attempt to accomplish the identical goal." Therefore, this count was barred by *res judicata*. Accordingly, the court granted the motion to dismiss the Amended Complaint.

## VI.

### Motion to Alter or Amend

On February 10, 2020, Mr. Balsamo filed a Motion to Alter or Amend, arguing that the court erred in granting the motion to dismiss "on the basis of evidence offered outside of the pleadings without giving [Mr. Balsamo] the opportunity to rebut it." He asserted that, if the court based its decision on the ground that *res judicata* barred the litigation, it effectively treated the motion as one for summary judgment, and the court should re-open

16

the case to allow him the opportunity to introduce evidence on that issue. If the court treated the motion as one to dismiss, it should analyze whether he properly stated a claim upon which relief could be granted. Mr. Balsamo further argued that his counsel had requested leave to amend the Complaint at the motion hearing, and the court erred in not addressing that request in its Memorandum Opinion and Order.

Mr. Balsamo submitted an affidavit of Abigail E. Ticse, an attorney and colleague of Mr. Balsamo's counsel. In the affidavit, Ms. Ticse stated that, had Mr. Balsamo's counsel "proceeded with the preliminary injunction hearing" on January 9, 2020, counsel expected to present documentary and testimonial evidence of the following:

> a. In support of its allegation at paragraph 35 of the Amended Complaint, that [BNP] is paying, and has been paying, the taxes on the Lauzon Road property in Canada through the present, causing the loan balance to increase, rather than decrease as one would expect over time, because Mr. Zorzit causes BNP to make additional disbursements for taxes and other expenses. By proceeding in such a manner, Mr. Zorzit has frustrated the reasonable expectation of Mr. Balsamo that, if in fact BNP has the authority to make such loans in the first place, that any such loans would be serviced in a manner maximizing benefit to BNP, not to an entity owned by Mr. Zorzit that was the recipient of the loan in the first place.

> b. That Mr. Zorzit failed to notify Chick-fil-A of the change in ownership, unnecessarily causing Chick-fil-A to continue to remit payments to an entity owned by Mr. Zorzit, Norino Properties, that did not have a segregated account for receipt of such payments, in violation of the appropriate standard of care, and that Norino Properties has at times, including after October 2017, failed to transfer the payment to BNP.

> c. That in 2018 and 2019, Mr. Zorzit used a company that he owns in Maryland, Norino Construction, to perform work at a property owned by BNP in Florida, the North Port shopping center, and that in connection therewith, Mr. Zorzit falsely stated that the property was owned by another of his companies, Norino Properties, and failed to undertake any analysis to determine whether BNP should engage in this self-dealing transaction and whether that was fair to Mr. Balsamo.

17

d.      That Mr. Zorzit has allowed the [Amer] loan to go through a 40-month period in which no payments were required, with such period of time stretching past October 2017, with no good reason to support such loan forgiveness.

e.      That Mr. Zorzit has not enforced BNP's lease with Eye Candy Lounge after October 2017, allowing that entity to forego rent payments for no good reason.

f.      That since October 2017, Mr. Zorzit has taken tenants of his other companies to court over the failure to, e.g., pay rent, which creates the inference that he is giving preferential treatment to his companies over BNP and in violation to the duties he owes Mr. Balsamo.

g.      That with regard to Cherrydell Road, the parties continued discussion of that issue until 2017, long after the trial took place, and from Mr. Balsamo's perspective, no agreement was reached on the issue, meaning it is still outstanding.

h.      That the general ledgers that Mr. Zorzit has provided to Mr. Balsamo . . . contain fraudulent misrepresentations that Mr. Balsamo was not able to uncover until he finally received the bank statements and records by subpoena that [appellants] sought to quash last Fall. . . . [Appellants] knew that the bank records would contradict the general ledger, which creates not only an action for fraud against Mr. Zorzit of which Mr. Balsamo was unaware until the bank records were received in August 2019, but it eviscerates any argument [appellants] might offer that they have not obfuscated records but to the contrary, have satisfied their duty to keep Mr. Balsamo informed as to the BNP's financial state.

i.      That BNP's partnership tax return for 2018, prepared by BNP's managing member, wrongfully includes adjustments beyond just applying the court-ordered adjustments for BNP partnership capital accounts associated with [*Balsamo I*], putting BNP at future risk in the event of an IRS audit.

Appellants filed an Opposition, arguing, among other things, that the court's consideration of documents attached to the Amended Complaint, i.e., the Management Agreement and the court's Findings of Fact and Conclusions of Law in *Balsamo I*, was

18

appropriate and did not convert the motion to one for summary judgment. They also argued that the court "acted well within its discretion" in dismissing the Amended Complaint with prejudice.

In an Order dated April 2, 2020, the court summarily denied Mr. Balsamo's Motion to Alter or Amend the judgment of dismissal.

## VII.

## In Banc Proceedings

On April 3, 2020, Mr. Balsamo filed a Notice for In Banc Review. Appellants filed a motion to dismiss, arguing that in banc review, which was authorized by Article IV, § 22 of the Maryland Constitution, was not available in this case "because no trial was conducted."

Mr. Balsamo filed an opposition, arguing that Article IV, § 22 permits in banc review of a decision dismissing a case for failure to state a claim upon which relief can be granted. He asserted that in banc review was not intended to be limited to cases in which there has been a "trial," and even if it was, a trial occurred in this case.

On July 6, 2020, the in banc panel issued an Opinion denying appellants' motion to dismiss the request for in banc review. The panel acknowledged that Article IV, § 22 of the Maryland Constitution provides the right to in banc review "where any trial is conducted by less than three circuit judges." It rejected appellants' argument that a trial means an evidentiary hearing, however, stating that this position was "at odds with respected commentary," *see* Paul V. Niemeyer and Linda M. Schuett, *Maryland Rules Commentary* 779 (5th ed. 2019), whose authors opined that in banc review exists

19

"following any final judgment, not simply those rendered after a trial on the merits." The in banc panel further noted that this view matched the Court of Appeals' decision in *State v. Phillips*, 457 Md. 481, 512 (2018), in which the Court stated that, "in any case in which a party has a right to appeal from a final judgment to the Court of Special Appeals," the party has the right to request in banc review of an interlocutory ruling after final judgment is entered.[8] Based on these authorities, the panel found that the circuit court's decision was a final judgment that was reviewable in banc. It denied appellants' motion to dismiss and scheduled a merits hearing on Mr. Balsamo's request for in banc review.

The merits hearing occurred on September 15, 2020. Counsel for Mr. Balsamo explained that Counts One and Eight were dismissed on grounds of *res judicata*, Counts Three and Six were dismissed for failure to state a claim, and Counts Two, Four, Five, and Seven were dismissed on both of these grounds. Counsel stated that he was not challenging the court's decision regarding Counts Three and Six. With respect to the other counts, counsel argued that he thought the claims were sufficiently pleaded, but if they were not, he requested leave to amend to add specific dates when events occurred.

Counsel for appellants reiterated his argument that the court properly dismissed the Amended Complaint. He asserted that the court did not abuse its discretion in not granting leave to amend, noting that Mr. Balsamo had already filed an amended complaint after appellants filed their first motion to dismiss, and he failed to fix any of the deficiencies.

---

[8] We note that the beginning of this sentence states: "Subject to any law that, in a particular circumstance, would provide otherwise." *State v. Phillips*, 457 Md. 481, 512 (2018).

He argued that the panel did not have jurisdiction to engage in in banc review, but if there was jurisdiction, the panel should affirm.

On January 22, 2021, the in banc panel filed an Opinion reversing the circuit court's denial of leave to amend. In so doing, the panel noted as follows:

> During argument on January 9, 2020, Mr. Balsamo informed the court that it had recently received bank records from Wells Fargo on December 20, 2019 as well as other records from Chick-fil-A which he argued would permit new allegations of actual fraud.
>
> At a point in the argument, Mr. Balsamo recognized the possibility that the court might grant the motion and asked the court for "one more opportunity to plead [his] best case." The court went so far as to acknowledge this possibility, "I guess we will be seeing another amended complaint[.]"
>
> Following the court's dismissal of Mr. Balsamo's Amended Complaint on January 29, 2020, Mr. Balsamo filed a Motion to Alter or Amend Judgment on February 10, 2020. The motion included a request for leave to further amend his complaint. Mr. Balsamo attached an affidavit identifying what he described as "new evidence" obtained since the filing [of] the Amended Complaint as well as further details of [appellants'] post-[*Balsamo I*] conduct supporting the causes alleged.
>
> This litigation has had a very long life and the trial judge has plowed many hours into its resolution. We nevertheless conclude that, in light of the verified allegations submitted in support of [Mr. Balsamo]'s request for leave to further amend his complaint, it was an abuse [of] the court's discretion not to grant that request. The potential for prejudice to [appellants] or unnecessary delay is outweighed by the right of [Mr. Balsamo] to "plead his best case," perhaps for a final time.

(Internal citations omitted).

The in banc panel did not address the propriety of the court's decision to grant the motion to dismiss based on *res judicata*, stating: "As we have determined that it was an abuse of discretion to deny Mr. Balsamo's request to further amend his complaint, the court

does not reach the substantive issue of *res judicata*." Accordingly, the panel reversed the decision of the court denying Mr. Balsamo leave to amend the complaint, and it granted Mr. Balsamo 30 days to file a Second Amended Complaint.

This appeal followed.

## DISCUSSION

## I.

### Scope of In Banc Review

Review by an in banc circuit court panel is authorized by Article IV, § 22 of the Maryland Constitution. This provision, which "originated at the Constitutional Convention of 1867," *Remson v. Krausen*, 206 Md. App. 53, 62 (2012), has been the subject of multiple appellate opinions. *See Phillips*, 457 Md. at 496–506 (discussing cases). In this case, we address the scope of in banc review in the context of the provision providing that such review is permitted where "any trial is conducted."

Article IV, § 22 currently provides:

Where any trial is conducted by less than three Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of three Judges of the Circuit, who shall constitute a court in banc for such purpose; and the motion for such reservation shall be entered of record, during the sitting at which such decision may be made; and the procedure for appeals to the Circuit Court in banc shall be as provided by the Maryland Rules. The decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal by an adverse party who did not seek in banc review, in those cases, civil or criminal, in which appeal to the Court of Special Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of the District Court, nor

22

to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law.

Md. Const. art. IV, § 22.

"The purpose of the constitutional provision authorizing an in banc appeal was to provide a substitute or alternate for an appeal to the Court of Appeals or, in recent years, to the Court of Special Appeals." *Bd. of License Comm'rs for Montgomery Cnty. v. Haberlin*, 320 Md. 399, 406 (1990), *abrogated on other grounds by Bienkowski v. Brooks*, 386 Md. 516 (2005). *Accord Costigin v. Bond*, 65 Md. 122, 122 (1886) (Article IV, § 22 "gave a new right of appeal" that was "in substitution of an appeal" to the appellate court). An in banc panel "'functions as a separate appellate tribunal.'" *Guillaume v. Guillaume*, 243 Md. App. 6, 11 (2019) (quoting *Hartford Fire Ins. Co. v. Est. of Sanders*, 232 Md. App. 24, 37 (2017)).

As indicated, the in banc panel here concluded that Article IV, § 22 allowed in banc review following any final judgment. Appellants contend that the panel erred in so concluding. They assert that the court lacked jurisdiction to hear Mr. Balsamo's request for in banc review because Article IV, § 22 limits such review to cases where a "trial is conducted," and the dismissal of the Amended Complaint did not constitute a "trial."

Mr. Balsamo disagrees. He contends that Article IV, § 22 permits in banc review of a dismissal for failure to state a claim for either of two reasons. Initially, Mr. Balsamo argues that the right to in banc review is not limited to rulings after there has been a trial. In any event, even if in banc review is so limited, Mr. Balsamo asserts that "the proceeding from which the appeal was taken meets the definition of a 'trial.'"

23

When this Court reviews an in banc panel's decision, our role is similar to that of the Court of Appeals when it reviews a decision from this Court. *Guillaume*, 243 Md. App. at 11. Our standard of review depends on the question presented. *Id.* at 11–12. As we have explained:

> "When a pure question of law comes before either this Court or the Court of Appeals, the standard of review is *de novo*, that is, neither Court gives any deference to the trial court's interpretation of the law." [*Hartford Fire Ins. Co. v. Est. of Sanders*, 232 Md. App. 24, 39 (2017)]. When reviewing a trial court's exercise of discretion, however, "our standard is abuse of discretion, which is highly deferential to the trial court that is the judicial body that exercised its discretion." *Id.* at 40.

*Id.*

The issue whether the in banc panel had jurisdiction to review Mr. Balsamo's petition for in banc review is "a purely legal question." *Guillaume*, 243 Md. App. at 12. Accordingly, we review this issue de novo, giving no deference to the panel's decision.

We begin with the question whether the right to in banc review provided by Article IV, § 22 is limited to cases in which there has been a "trial." Mr. Balsamo argues that it is not, stating that the cases have "interpreted the scope of the right to in banc review as being coextensive with the statutory right of appeal."

In addressing this issue, we note that, when interpreting constitutional provisions, our task is to "discern and then give effect to the intent of the instrument's drafters and the public that adopted it." *State Bd. of Elections v. Snyder*, 435 Md. 30, 53 (2013). As the Court of Appeals has cautioned, however, "'because the Constitution was carefully written by its drafters, solemnly adopted by the constitutional convention, and approved by the people of Maryland, courts lack the discretion to freely depart from the plain language of

24

the instrument.'" *Phillips*, 457 Md. at 487 (quoting *Snyder*, 435 Md. at 53). "When that language is clear and unambiguous, we need not review more than the words of the constitutional provision." *Remson*, 206 Md. App. at 62. Occasionally, however, "'we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language, including 'archival legislative history.'" *Phillips*, 457 Md. at 488 (quoting *Reger v. Washington Co. Bd. of Ed.*, 455 Md. 68, 96 (2017)).

Thus, we look first to the language of Article IV, § 22. The plain language of the provision, which limits in banc review to a case "[w]here any trial is conducted," is clear and unambiguous. Article IV, § 22 provides that in banc review is available only after a trial.

Nothing in the legislative history suggests a contrary result. The Court in *Phillips* set forth an exhaustive review of the events leading to the adoption of § 22 and its legislative history. *Id.* at 489–94. It stated that, although the reason for the adoption of § 22 was "not altogether clear,"

> "it appears to have been, as its commonly recognized nickname of 'the poor person's appeal' suggests, a response to a fear of the framers of the Constitution of that year that the distance to Annapolis and the concomitant delay and expense incident to prosecuting an appeal in the Court of Appeals would discourage or preclude many litigants from seeking justice by means of appellate review."

*Id.* at 500 (quoting *Washabaugh v. Washabaugh*, 285 Md. 393, 396 (1979)).

In construing the intent of Article IV, § 22, we note that it has been amended. Amendments to a constitutional provision also "bear on the proper construction of the provision as it currently exists," and in such a situation, "the intent of the amenders . . .

25

may become paramount." *Phillips*, 457 Md. at 489. Article IV, § 22 has been amended two times since 1867, "the principal one being in 2006." *Id.*[9]

Prior to 2006, Article IV, § 22 provided for in banc review in cases "*[w]here any Term is held*, or trial conducted by less than the whole number of said [c]ircuit [j]udges." *Berg v. Berg*, 228 Md. App. 266, 272 (2016) (emphasis in original). In 2006, Article IV, § 22 was amended by, among other things, deleting the phrase "Term is held, or." *Id.* at 273. Thus, Article IV, § 22 now provides for in banc review in cases "[w]here any trial is conducted by less than three Circuit Judges." Md. Const. art. IV, § 22.

In *Berg*, 228 Md. App. at 273–75, we stated that it was uncertain "[w]hat exactly the framers intended to convey when they used the words '[w]here any Term is held,'" and the legislative history of the 2006 amendment did not indicate why the words were deleted. We concluded, however, that the "legislative history of House Bill 84 strongly suggests that the words at issue were considered to be archaic and for that reason were deleted with no substantive change intended." *Id.* at 276.

Despite the clear language limiting in banc review to cases where a "trial is conducted," Mr. Balsamo contends that such review is not so limited, relying on caselaw that has "interpreted the scope of the right to in banc review as being coextensive with the statutory right of appeal." To be sure, courts have said that in banc review provides "a substitute or alternative" to an appeal to this Court, *Bethesda Title & Escrow, LLC v.*

[9] In 1978, "to take account of the creation of the District Court and the abolition of justices of the peace seven years earlier, § 22 was amended to substitute a reference to the District Court for the reference to justices of the peace." *Phillips*, 457 Md. at 500. That amendment has no relevance to the issues raised in this appeal.

26

*Gochnour*, 197 Md. App. 450, 461, *cert. dismissed*, 421 Md. 192 (2011), and "a comparable and compatible alternative to an appeal to" this Court, *Phillips*, 457 Md. at 513. The Court of Appeals, however, has made clear that this alternative method of appeal "is not to be extended by construction beyond the terms of the constitution." *Costigin v. Bond*, 65 Md. 122, 122 (1886). The terms of Article IV, § 22 provide, contrary to Mr. Balsamo's argument, that in banc review is available only in cases where "any trial is conducted."

We turn next to the question whether the proceedings here constituted a "trial" under Article IV, § 22. As we explained in *Hernandez v. State*, 108 Md. App. 354, 359 (1996), *aff'd on other grounds*, 344 Md. 721 (1997), the word trial "can be read broadly or narrowly," and "the scope of the term depends mostly on its context." We noted that, in determining the right of a criminal defendant or the public to be present at "trial," the word "trial" is construed broadly to include certain motions hearings. *Id.* (citing *Waller v. Georgia*, 467 U.S. 39 (1984); *Redman v. State*, 26 Md. App. 241 (1975)). In *Hernandez*, 108 Md. App. at 360–61, by contrast, this Court construed the word "trial" narrowly to include only the actual trial on the merits.[10]

---

[10] *Hernandez v. State*, 108 Md. App. 354, 358–61 (1996), *aff'd on other grounds*, 344 Md. 721 (1997), involved Maryland Rule 4-406(b), which provided that a post-conviction hearing not be held by "the judge who presided at trial," absent consent. We concluded that Rule 4-406(b) did not apply to the judge who rules on a suppression motion, but rather, it applied only to that "judge who presided at the proceeding at which guilt or innocence was determined" because the purpose of the rule was to disqualify automatically only the judge "who is most likely to resist the petitioner's claims of error." *Id.* at 360–61.

Other jurisdictions recognize that the scope of the term trial depends on its context. *See Davis v. Davis*, 66 S.E. 401, 403 (Ga. App. Ct. 1909) ("The word 'trial' in a limited sense relates only to the examination and determination of issues of fact, but in the broader sense includes hearing and determining of issues, whether they are of law or of fact."); *People v. Redisi*, 544 N.E.2d 1136, 1139 (Ill. App. Ct. 1989) ("'trial' is not a word of rigid definition"); *see also* 88 C.J.S. *Trial* § 1 (2021) ("The term 'trial' has different meanings in different contexts.").

This case addresses the scope of the word "trial" in the context of in banc review pursuant to Article IV, § 22. We addressed that issue, although not in the context of the specific question here, in *Berg*, 228 Md. App. at 280–82.

In that case, after their divorce proceedings, Ms. Berg filed suit against her former husband, seeking to garnish his wages due to his failure to fully satisfy a $450,000 monetary judgment rendered against him. *Id.* at 270–71. Mr. Berg objected to Ms. Berg's method of payment allocation, which was to apply the payments that Mr. Berg had made to interest first and then to principal. *Id.* at 270. The circuit court held an evidentiary hearing regarding the amount Mr. Berg owed, at which time exhibits were introduced and Ms. Berg testified. *Id.* at 270–71. The court subsequently issued an order concluding that many of the payments should have been applied exclusively to principal. *Id.* at 270.

After Ms. Berg's motion to alter or amend was denied, she filed a petition for in banc review. *Id.* Mr. Berg argued that the in banc panel did not have jurisdiction to hear the appeal "because the issue the panel was asked to consider did not 'stem from a merits trial.'" *Id.* The in banc panel determined that it had jurisdiction to hear the appeal, and it

28

reversed, ruling that "all payments made on the $450,000 judgment should be credited 'first to interest and then to principal.'" *Id.*

On appeal, this Court initially rejected Mr. Berg's argument that in banc appeals were not available from rulings on a post-trial motion, but rather, they were permitted only regarding errors made by a judge at a "merits trial." *Id.* at 276–79. We noted that the words in the Constitution did not contain time restrictions to support that argument, and we concluded that in banc review of post-trial decisions was allowed. *Id.* at 276, 279.

In any event, we determined that the issue presented was based on what occurred at a trial. *Id.* at 279. We began by looking to the "'normal, plain meaning'" of the word "trial." *Id.* at 280 (quoting *Remson*, 206 Md. App. at 61). After surveying many sources, we rejected Mr. Berg's narrow interpretation of the term trial to mean a "merits trial," and not any subsequent proceeding. *Id.* at 280–81. We interpreted the word "trial," in the context of Article IV, § 22, to mean "'that step in an action by which issues or questions of fact are decided.'" *Id.* at 281 (quoting *Miller v. Tobin*, 18 F. 609, 616 (C.C.D. Or. 1883), *overruled on other grounds by Alley v. Nott*, 111 U.S. 472 (1884)). Applying that definition, we held that, when the court decided, based on evidence introduced, how Mr. Berg's payments should be applied, a "trial" occurred. *Id.* at 281–82.

At the end of the *Berg* opinion, this Court noted an "interesting" issue, i.e., whether an in banc panel has jurisdiction "to decide whether a motion for summary judgment should have been granted, or whether a circuit court judge erred in granting a motion to dismiss a complaint for failure to state a cause of action upon which relief can be granted." *Id.* at 282–83. We declined, however, to address that issue, leaving it for another day. *Id.* at 283.

29

That day has arrived. In addressing whether dismissal of a complaint for failure to state a claim upon which relief can be granted constitutes a trial, we begin with the definition of "trial" adopted in *Berg*, i.e., "'that step in an action by which issues or questions of fact are decided.'" *Id.* at 281 (quoting *Miller*, 18 F. at 616). The analysis in *Miller*, which was decided in 1883, close to the time when Article IV, § 22 was adopted, is instructive.

In *Miller*, 18 F. at 615, the issue involved whether a petition to remove a complaint from state court to federal court was timely, based on a statute providing that an application for removal could be made only before "trial." The defendant had demurred to Miller's complaint on the ground that "it did not state facts sufficient to constitute a cause of action." *Id.* at 610.[11] The court overruled the demurrer, with leave to the defendant to file an answer on the merits. *Id.* The defendant subsequently filed an application for removal to federal court. *Id.* at 611. Miller argued that, because the application was made after the court held a hearing on, and overruled, the demurrer, the application was not made before "trial," and therefore, it was filed too late. *Id.* at 615. The court held that a "determination of a cause upon a demurrer to the complaint is a 'trial'" if it results in a final disposition of the case. *Id.* at 615–16.

In the *Miller* case, however, the demurrer was denied and there was no final judgment rendered. *Id.* at 616. Rather, leave to file an answer was given. *Id.* In that

---

[11] A demurrer is the predecessor to a motion to dismiss for failure to state a claim upon which relief can be granted. *See Heery Int'l, Inc. v. Montgomery Cnty., Maryland*, 384 Md. 129, 139 n.5 (2004).

situation, the court determined that there was no "trial" that resulted in a final disposition of the case, and therefore, the application to remove the case to federal court was timely. *Id.*

In *Alley*, 111 U.S. at 475, the United States Supreme Court similarly discussed the issue of what constitutes a "trial" in the context of the federal statute that required a petition for removal to be filed "before the trial."[12] That case also involved disposition of a demurrer to a complaint on the ground that the complaint did not "state facts sufficient to constitute a cause of action." *Id.* The Court stated that such a pleading "raises an issue which, when tried, will finally dispose of the case as stated in the complaint, on its merits, unless leave to amend or plead over is granted." *Id.* It concluded that "[t]he trial of such an issue is the trial of the cause as a cause," and if final judgment is entered, it is a "final determination of the rights of the parties." *Id.* The Court held that "the trial of an issue raised by a demurrer which involves the merits of the action, is . . . a trial of the action[.]" *Id.* at 475–76.[13]

Pursuant to the reasoning of these cases, there is support for a finding that a "trial" occurred here, when the circuit court, after a hearing, granted appellants' motion to dismiss the complaint with prejudice. Using the definition of "trial" adopted in *Berg*, 228 Md.

---

[12] The statute subsequently was amended to require that removal petitions be filed before the time to answer or plead to the complaint, except in certain circumstances. *Rothner v. City of Chicago*, 879 F.2d 1402, 1412–13 (7th Cir. 1989). The reasoning of the Court nevertheless is instructive on the issue of what constitutes a trial.

[13] The Court went on to hold, contrary to the decision in *Miller*, that even when a court denies the demurrer, there has been a "trial" within the meaning of the removal statute. *Alley v. Nott*, 111 U.S. 472, 476 (1884).

App. at 281, "an action by which issues or questions of fact are decided," the grant of a motion to dismiss with prejudice is an action that decides issues in the case, and in this case, the ruling was dispositive of the claims between the parties.

Appellants construe this definition differently. They argue that an "action by which issues or questions of fact are determined" relates only to proceedings resolving factual dispute. They assert that the terms "issues" and "questions" both modify the word "fact." We disagree.

In making their argument, appellants ignore that the word "issues" is separated from the words "questions of fact" by the word "or." The word "or" "generally has a disjunctive meaning, that is, the word is used to indicate 'an alternative between unlike things, states or actions.'" *Gilroy v. SVF Riva Annapolis LLC*, 234 Md. App. 104, 111 (2017) (quoting *Webster's Third New International Dictionary Unabridged* 1585 (1986)), *aff'd*, 459 Md. 632 (2018). *Accord Plank v. Cherneski*, 469 Md. 548, 620 (2020) ("'Each item in a string of terms, separated by the disjunctive 'or,' is given independent meaning.'") (quoting *Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, 454 Md. 475, 491 (2017)).

Giving the word "or" its usual interpretation, we conclude that the term "trial" in the context of in banc review should be read broadly to include an action that determines issues (of law or fact) or questions of fact, as long as the action results in a final judgment.[14]

---

[14] The Court of Appeals has noted that both an appeal to a circuit court in banc and an appeal to this Court "ordinarily require that there be a final judgment in the matter." *Phillips*, 457 Md. at 503.

32

The circuit court ruling here, granting the motion to dismiss with prejudice, was a final judgment resolving the action between the parties, and therefore, it was a "trial" pursuant to Article IV, § 22. The in banc panel properly found that it had jurisdiction to review the case, and it properly denied appellants' motion to dismiss.

## II.

## Leave to Amend

Having determined that the in banc panel had jurisdiction to hear the appeal, we address the panel's decision on the merits. As indicated, the panel did not address the issue of *res judicata* or whether the circuit court's decision on the motion to dismiss was legally correct. Instead, the panel concluded that the circuit court abused its discretion in not granting Mr. Balsamo's request to further amend his complaint. It reversed the court's decision denying Mr. Balsamo leave to amend the complaint, and it gave him 30 days to file a Second Amended Complaint.

Appellants contend that the in banc panel erred in determining that the circuit court abused its discretion in denying Mr. Balsamo leave to amend. They note the high standard for finding an abuse of discretion and argue that the panel did not apply that standard, but rather, it "merely substituted its judgment for that of the trial court," which "simply is not permitted."

Mr. Balsamo contends that the in banc panel properly concluded that the trial court abused its discretion in not granting him leave to amend. He argues that the policy in Maryland is to allow amendments of pleadings liberally, and given indications that there

were new facts relating to dismissal on grounds of *res judicata*, and the lack of prejudice to appellants, the judgment of the in banc panel should be affirmed.

Maryland Rule 2-322(c) provides that, if a court grants a motion to dismiss, "an amended complaint may be filed only if the court expressly grants leave to amend." The decision whether "to allow amendments to pleadings or to grant leave to amend pleadings is within the sound discretion of the trial judge," and the decision in that regard will be reversed only on a showing of "a clear abuse of discretion." *Schmerling v. Injured Workers' Ins. Fund*, 368 Md. 434, 443–44 (2002). "Nevertheless, under Maryland Rule 2-341(c), amendments to pleadings are allowed 'when justice so permits.'" *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 673 (2010) (quoting Md. Rule 2-341(c)). As the Court of Appeals has explained:

> Although it is well-established that leave to amend complaints should be granted freely to serve the ends of justice and that it is the rare situation in which a court should not grant leave to amend, *see Hall v. Barlow Corp.*, 255 Md. 28, 40–41 (1969), an amendment should not be allowed if it would result in prejudice to the opposing party or undue delay, such as where amendment would be futile because the claim is flawed irreparably. *See Robertson v. Davis*, 271 Md. 708, 710 (1974).

*RRC Ne.*, 413 Md. at 673–74.

Here, the in banc panel concluded, and we agree, that the circuit court abused its discretion by denying Mr. Balsamo leave to amend.[15] In granting the motion to dismiss, the court stated on several occasions that there were no facts alleging that claims occurred after the ruling in *Balsamo I*, or that circumstances had changed since that ruling. During

---

[15] We note that, contrary to appellants' assertions, the in banc panel recognized the appropriate standard of review and explicitly found an abuse of discretion.

the hearing on the motion to dismiss, and in the affidavit attached to the motion to alter or amend, however, counsel proffered that there were facts supporting a finding that appellants engaged in unlawful conduct after the judgment entered in *Balsamo I*.

This is not one of those "rare cases" where an amendment was justifiably denied due to prejudice, given that discovery had not commenced and no trial date was set when the court dismissed the case. Moreover, as indicated, based on the proffer at the hearing and in the affidavit, it did not appear that any amendment was futile. Under these circumstances, we agree with the in banc panel that the court abused its discretion in denying Mr. Balsamo leave to amend the complaint.

**JUDGMENT OF THE IN BANC PANEL AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**